## THE STATE, DEFENDANT IN ERROR, v. GEORGE WASHINGTON KNIGHT, PLAINTIFF IN ERROR.

Argued June 29, 1921—Decided November 14, 1921.

1. At common law, the verdict of a jury in a criminal case declaring the defendant guilty is not final. While the jurors compose the appropriate tribunal for the determination of questions of fact, yet when they found a verdict for the state in a criminal case upon evidence which, viewed in any rational aspect, must leave reasonable doubt of the guilt of the accused, the latter could appeal to the trial court for a new trial.

2. The act of April 12th, 1921 (*Pamph. L.,* p. 951), which provides that in criminal cases, courts of appeal may review the question whether a verdict of guilty is against the weight of evidence, does not violate the constitutional provision that the right of trial by jury shall remain inviolate in criminal cases. The purpose of the act is to increase the protection of the accused; it does not vest in the state the power to submit to the appellate court the question of the validity of a verdict, but only gives the defendant the right to have it reviewed, at his option.

3. The act of April 12th, 1921 (*Pamph. L.,* p. 951), which provides for the review of a question of fact by the Court of Errors and Appeals in criminal cases, does not violate the constitutional provision that the judicial power shall be vested in such court "as heretofore," as the act does not curtail, but rather enlarges, such power; and such enlargement is not prohibited by the provision.

4. An attempt to commit rape does not begin with the act of pene-
tration, but with the primary attack upon the woman, for the
purpose of carrying out the intent; and this intent may be
formed at the very moment of the attack.

On error to the Middlesex County Court of Oyer and
Terminer.

For the plaintiff in error, *William I. Garrison.*

For the state, *Joseph E. Stricker,* prosecutor of the pleas,
and *John E. Toolan,* assistant prosecutor.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The defendant, having been
convicted in the Middlesex Oyer and Terminer of murder in
the first degree perpetrated by killing one Edith Wilson while
robbing her and also attempting to commit a rape upon her,
has brought up to this court the entire record of the proceed-
ings had upon the trial, pursuant to the provision of section
136 of the Criminal Procedure act.

The only ground upon which the defendant seeks to reverse
the conviction is that the verdict is clearly against the weight
of the evidence, for the reason that it does not appear from
the testimony that he committed the crime of murder, as
charged in the indictment, but, on the contrary, it shows that,
if any crime was committed by him, it was of a lower degree
than that found by the jury.

He bases his right to have this court, sitting in review, de-
termine whether the verdict of the jury was against the weight
of the evidence, upon the act of April 12th, 1921, entitled
"Supplement to an act entitled 'An act relating to courts
having criminal jurisdiction and regulating proceedings in
criminal cases.'" *Pamph. L.* 1921, *p.* 951. The statute ap-
pealed to enacts that "in all cases where the plaintiff in error
shall elect to take up the entire record with his writ of error,
as provided in the act to which this is a supplement, he may
assign as error that the verdict was against the weight of the

evidence, whether any exception has been taken or not, or whether any motion to acquit has been made or not, and if it shall appear from a consideration of the entire evidence, that such verdict was against the weight of the evidence, the appellate court shall remedy such wrong by reversing such verdict and awarding a new trial." The state concedes that if this statute is a valid enactment, it justifies the assignment of error in the present case. It contends, however, that the act is unconstitutional—*first,* because it violates article 1, paragraphs 7 and 8 of the constitution, which declare that "the right of a trial by jury shall remain inviolate;" and that "in all criminal prosecutions the accused shall have the right to a trial by an impartial jury," and *second,* because it violates article 6, section 1, paragraph 1 of that instrument, which declares that "the judicial power shall be vested in a Court of Errors and Appeals in the last resort in all causes as heretofore;" and in certain specifically-named courts which are inferior thereto.

This contention on the part of the state presents a preliminary question which we must determine; for, if it is sound, the assignment of error must fall, as the review of verdicts for the purpose of determining whether they are supported by the proofs in a case is no part of the common law functions of this court.

In taking up the consideration of the questions thus raised, we are met with the contention of the defendant that the matter is *stare decisis;* and he appeals to our decision in the case of *Kohl* v. *State,* 59 *N. J. L.* 445, as authority for his position. In that case this court, under a statutory provision similar in its essence to that contained in the act of 1921 (but which was shortly afterward repealed), examined the testimony sent up with the writ to determine whether or not a conviction of murder in the first degree was justified; and reaching the conclusion that upon it the guilt of the defendant was doubtful, reversed the conviction and sent the case back for a new trial. Counsel for the state argues that the matter is not foreclosed by that decision, for the reason that, so far as the opinion in the case discloses, the question of the

constitutionality of the law was not considered, and that, therefore, it may fairly be concluded that it was not raised. Without determining whether the one contention or the other is sound, we have assumed, for the purposes of the decision, that the case of State *v.* Kohl is not controlling upon this point, and proceed to a consideration of the soundness of the proposition submitted by the prosecutor of the pleas.

Taking up the first point—that is, that the statute violates the provisions of the constitution relative to trial by jury— the argument, as we understand it, is that in a criminal case the verdict of the jury on the question of the guilt or inno- cence of a defendant is final, and, in view of these provisions, cannot be nullified by judicial action. But this is not so. Mr. Justice Dixon, in his opinion in *State* v. *Kohl* (at *p.* 446), points out that, although the jurors compose the ap- propriate tribunal for the determination of controverted ques- tions of fact, they cannot justly find a verdict for the state in a criminal case upon evidence which, viewed in any rational aspect, must leave reasonable doubt of guilt in every con- siderate mind; and that against such a verdict the party ag- grieved can, by the common law, appeal to the trial court for a new trial. The narrow question is whether the present statute, which merely substitutes this court in the place of the trial court, violates the constitutional interdict. To us it seems clear that this mere substitution does not lessen the constitutional protection which the provisions throw about a person charged with crime. But if we are wrong it does not follow that the statute is invalid. The purpose of the act is to increase that protection rather than diminish it. It does not vest in the state the power to submit to this court the question of the validity of a verdict, but only clothes the de- fendant himself with the right to have that verdict reviewed at his option; that is to say, he may rest upon the constitu- tional protection which that instrument gives him, and insist that the verdict of the jury be accepted as a finality, or he may elect to treat the verdict as not a final determination of the facts, and call upon this court to determine whether it is justified under the evidence. A question somewhat similar to

that now under consideration was presented to the Supreme Court in the case of *Edwards* v. *State,* 45 *N. J. L.* 419. There the defendant was tried and convicted under a statute which permitted a person charged with crime to waive indictment and trial by jury and request a speedy trial before the Court of Special Quarter Sessions. A conviction having been had, he challenged its validity upon the ground that the legislature by passing the act had contravened the provisions of the constitution relating to trial by jury. Mr. Justice Depue, in dealing with this contention, pointed out that these provisions, together with that which prohibits an alleged criminal from being tried upon a charge laid against him except upon "a presentment or indictment by a grand jury," are a part of the bill of rights, like the right to enjoy religious freedom, the right to enjoy and defend life and liberty, the right to enjoy freedom of speech, and security against unreasonable searches and seizures, designed for the security of the personal rights of the individual, and that they are expressly retained by the constitution itself to the people from whom that instrument emanated; and then declared that these rights, thus retained, are subject to that fundamental rule of law that "a person may renounce a provision made for his benefit, and to that maxim, *Quilibet potest renunciare juri pro se introducto,* which applies as well to constitutional law as to any other." We concur in the view thus expressed, and conclude that the statute does not violate the provisions of the constitution which we have been discussing.

We now take up the consideration of the second ground of attack upon this statute, namely, that it violates that part of section 1, article 6 of the constitution, which declares that "the judicial power shall be vested in a Court of Errors and Appeals in the last resort in all causes as heretofore." A reading of the statute makes it apparent that it places an additional burden on this court, requiring it not only to pass upon alleged errors of law in criminal cases brought up for review, but also upon an alleged error of fact—that is, the mistake of a jury in basing its verdict upon unsufficient evidence. But in doing that it does not curtail in any degree the

constitutional powers vested in the court, but, on the contrary, increases them. We are to determine, therefore, whether the legislature may vest in this court powers in addition to those exercised and enjoyed by it at the time of the adoption of the constitution; and this question, we think, is answered by the opinion of the late Chief Justice Beasley in *Harris* v. *Vanderveer's Executor, 21 N. J. Eq. 424.* He says: "The essential qualities of all the constitutional courts are indestructible and unalterable by the legislature. But an extension of the jurisdiction of a court, such extension being in harmony with its character, and not being a usurpation on the inherent powers of any other court, is not within the constitutional prevention. * * * In the judicial system of a state, few things can be imagined more obstructive of the progress of society than courts with jurisdictions absolutely fixed. Such a contrivance is an anomaly nowhere to be found; it is certain it cannot be pretended to have ever existed in this state. From the earliest times, every session of the legislature has added to the subjects of judicature, and the jurisdiction of our courts has been adjusted to this ever-varying condition of things;" and, after a further discussion of the matter, concludes as follows: "The consequence is that when the constitution vests power in a court 'as heretofore' and declares that it shall continue with like powers and jurisdiction as though the constitution had not been adopted, the effect is that the primitive powers of such a tribunal remain inalienably established, while at the same time there is implanted in it that principle of development by which its cognizance may be extended over new cases as they arise and which principle is a part of its very nature and constitution. I have no doubt, therefore, that the jurisdiction of this court is extensible at the will of the legislature, provided, by such extension, the province of no other court or department of government is intrenched upon or invaded." In his concluding statement the learned Chief Justice evidently referred to other constitutional courts, for no one appreciated more thoroughly than he did that the power of the legislature over courts created by it was supreme, and that the functions of such courts—of which

the Oyer and Terminer is one (*State* v. *Taylor*, 68 *N. J. L.*
276)—are subject to alteration, diminution or destruction at
the will of the legislature.

It will be observed that in the above citation the writer of
the opinion limits the power of the legislature, in extending
the jurisdiction of this court, to such extensions as are in
harmony with its character, and it has been suggested that the
review of testimony, in cases which are sent up to us from
courts of law, is out of harmony with the inherent character-
istics of the court. But this, we think, is not so. As this
court existed at the time of the adoption of the constitution
its jurisdiction was limited to the review of alleged legal
errors in cases coming up from the law courts and of alleged
errors both in the application of legal rules and in conclu-
sions of fact in cases coming up from the Court of Chancery.
This was the limit of our jurisdiction at the time of the
passage of the statute, which was the subject of consideration
in *Harris v.* Vanderveer's Executor. That statute enacted that
all persons aggrieved by any order or decree of the Preroga-
tive Court might appeal from the same to this court "in the
same manner in all respects as now provided by law for ap-
peals from the Court of Chancery." The Prerogative Court,
in its powers, functions, characteristics and jurisdiction, was
modeled to a large extent upon the ecclesiastical courts of
England. It was as distinct, in its essence, from the Court of
Chancery as it was from our courts of law. If the legislature,
instead of providing for the broad review which existed in
cases coming up from Chancery, had seen fit to limit the re-
view to alleged errors of law, its power to do so could not be
successfully challenged upon the theory that such a review was
not consistent with the nature of this court. And the con-
verse is true, namely, that the conferring upon this court of
jurisdiction to review conclusions of fact as well as alleged
errors of law in cases which, until the enactment of the stat-
ute, were outside our jurisdiction, is not inconsistent with the
inherent characteristics of this court. In fact, it was ex-
pressly so decided in the Vanderveer Will case. To say now
that the extension of our jurisdiction by the present statute

is out of harmony with the inherent character of the court would be to nullify our previous declaration that a similar extension by the earlier statute is not so.

Reaching the conclusion that neither of the constitutional provisions appealed to is a bar to the enactment of the statute, we take up the examination of the evidence in the case.

The undisputed proofs show that on the evening of July 12th, last, Mrs. Edith Wilson attended a moving picture theatre with a girl friend. They left the theatre about nine-twenty and walked part way home together, and separated a short distance from the Wilson residence. Some three hours later Mrs. Wilson's dead body was discovered in a vacant lot a short distance from the point where she and her friend had parted company. An investigation disclosed that the upper part of the drawers had been torn apart; that the underclothing was more or less blood-stained; that the chemise and undershirt had been pushed up as far as the breasts; that the private parts were lacerated; and there were marks about the neck, indicating pressure upon that part of the body. An autopsy showed that there had been a hemorrhage in the vagina, but that the apparent attempt to rape had not been entirely consummated. It further showed that death had resulted from shock directly caused by the assault. When she left her home early in the evening she wore a wrist watch and had two rings upon her fingers. When her body was found these articles were missing. The state proved, and the testimony was uncontroverted, that the defendant upon his return to his boarding-house on the night of the death of Mrs. Wilson gave his landlady the two rings which had been worn by Mrs. Wilson, and that two or three days later he borrowed two dollars and a half from a friend, and gave to him Mrs. Wilson's watch as security for the loan.

The state also offered in evidence three written confessions signed by the defendant, in which he stated that on the evening in question he had been drinking heavily with some friends in a saloon in Perth Amboy; that later they separated, and that he went away from the saloon alone; that as he was walking down the street he met a woman, and grabbed

her; that he dragged her over into an adjoining yard, raised up her clothes and attempted to have intercourse with her, but that whether he actually succeeded or not he did not know. He also said that the woman made no outcry and seemed to faint away, and that after making the attempt to ravish her he left her lying in this vacant lot and went away.

At the trial the defendant was called as a witness in his own behalf, and when examined with relation to these alleged confessions he admitted that he signed them, but insisted that they were made under duress, and that he answered the questions put to him in the way which the officers who obtained the confessions seemed to desire, without any knowledge whether these answers were true or not. He further stated on the witness-stand that he had not then, and never had, any memory with relation to the matters contained in his confessions, except that while walking down the street in a drunken condition he met someone (whether man, woman or child, he could not say); that he grabbed this person, and that from that time on he had no recollection of events until he boarded a car for Cliffwood, where he was then living.

If the confessions were true, the guilt of the defendant was absolutely demonstrated. The testimony produced on the part of the state with relation to them was that each of them was voluntary. The defendant, as I have already said, denied this, and the court left it to the jury to determine the fact, and they resolved it in favor of the state's contention. We think they were entirely justified in their determination, and that these confessions, coupled with the other facts which we have recited, proved beyond a reasonable doubt that the defendant was guilty of the crime charged against him in the indictment.

It is argued by counsel for the defendant that it is quite possible from the facts proved that Mrs. Wilson died before a rape was attempted to be committed upon her by the defendant, and that if she was already dead when the defendant attempted to penetrate her person, his offence does not come within the purview of the statute, for the reason that an attempt to commit a rape must be made upon the body of a

living person. The act upon which the indictment is based declares that "murder which shall be committed in perpetrating or attempting to perpetrate any arson, burglary, rape, robbery or sodomy shall be murder in the first degree." It is enough to say in disposing of this phase of the case that an attempt to commit a rape does not begin with the act of penetration, but with the primary attack upon the woman made for the purpose of carrying out the intent; and that this intent may be formed at the very moment of the attack. The suggestion that when the victim dies from shock directly resulting from the attack upon her, and the death precedes attempted penetration, the party committing the assault does not come within the condemnation of the statute, is entirely too unsubstantial to justify extended discussion.

On the whole case, therefore, we conclude that the conviction under review must be affirmed.

KALISCH, J. (concurring). I concur in the result reached —that is, that the judgment below should be affirmed, but am not in accord with the views expressed in the opinion that the statute of 1921, which provides: "In all cases where the plaintiff in error shall elect to take up the entire record with the writ of error, as provided in the act to which this is a supplement, he may assign as error that the verdict was against the weight of the evidence, whether any exception has been taken or not, or whether any motion to acquit has been made or not, and if it shall appear from a consideration of the entire evidence, that such verdict was against the weight of the evidence the appellate court shall remedy such wrong by reversing such verdict and awarding a new trial," is constitutional.

In my judgment, the act is clearly unconstitutional, in that it attempts to invest this court with the function to reverse the verdict of a jury on a question of fact, a function wholly foreign to, and incongruous with, the judicial powers conferred by the constitution. More amply stated, it is a legislative attempt to convert a writ of error in a criminal case into a rule to show cause, and to allow an appeal where a rule

to show cause has been denied or discharged, the plain effect of all this is to alter the institutional character of this court as established by the constitution—that is, a court to correct errors of law in judgments brought before it for review, by writ of error, and not to pass upon questions of fact which were in the province of a jury to decide.

It cannot be very well gainsaid that the legislature has power to confer additional jurisdiction upon courts of its own creation, within constitutional limitation, or upon courts which have their basic origin in and their jurisdictional functions prescribed by the constitution, so long as the institutional character of such courts is not altered, or no constitutional provision encroached upon. And in the light of this declaration the constitutionality of the statute under consideration must be tested.

The constitutional provisions, the consideration of which are involved in properly deciding this important question, are, first, article 3, which provides that the powers of the government shall be divided into three distinct departments—the legislative, executive and judicial; and expressly forbids those persons belonging to, or constituting one of these departments from exercising any of the powers properly belonging to either of the others, except as herein expressly provided.

In this connection it suffices to say that it needs no citation of authorities to establish that a legislature may not lawfully do indirectly what it is forbidden to do by the constitution in express terms. This clause of the constitution is a limitation upon the powers of the legislature as well as upon the executive and judiciary.

The legislature may not, therefore, in the guise of conferring additional jurisdiction upon a constitutional court whose judicial functions are prescribed by the constitution in express and unequivocal terms, alter, add to or detract from a fundamental judicial function belonging to the court, without first having obtained constitutional authorization.

The statute, here, in express terms dictates to this court how and in what manner it shall exercise the judicial function confided to it by the constitution, and which legislation, by

the way, is no less than an usurpation by the legislature of the exercise of a judicial power belonging to the court, and, hence, in that respect the act is in contravention of article 3 of the constitution. In that regard the present situation is clearly distinguishable from that which existed in *Harris* v. *Vanderveer's Executor*, 21 *N. J. Eq.* 424, where a statute was held constitutional which gave the right of appeal to a defeated litigant from an order or decree of the Prerogative Court to this court, no such appeal having been provided for in express terms by the constitution. That case is made the mainspring of the majority opinion, and will be referred to more fully later on in its proper relation to the subject-matter under discussion.

2. The next clause of the constitution which the statute encroaches upon is article 6, section 1, *placitum* 1, which declares "the judicial power shall be vested in a Court of Errors and Appeals in the last resort in all causes as heretofore."

In plain terms the constitution expressly limits the *judicial power* of the Court of Errors and Appeals, as exercised by it *before* the *adoption* of the *constitution of 1844*. In this conjunction must be read the last clause of section 1 of article 10, which declares: "The several courts of law and equity, except as herein otherwise provided, shall continue with the like powers and jurisdiction as if this constitution had not been adopted."

These constitutional discretions give rise to the essential inquiry, What was the extent of the judicial power exercised by this court before the adoption of the constitution of 1844? This inquiry finds its answer in the history of the legislation of this state prior to 1844. Briefly stated, the judicial power of this court granted and emanating from such legislation was to review final judgments of any Circuit or Supreme Court, by writ of error, and to review any order, or decree made by the Court of Chancery, by appeal. And it is made clear by the examination of the legislation referred to and the decisions of our courts that in a case at law brought for review to this court, by writ of error, this court was confined to a strict review of errors of law only, and on appeals from

the Court of Chancery it was empowered to review both the law and the facts. The term "court of errors" designates clearly that the court was instituted for the correction of errors at law, and the term "appeals," with equal clarity, to review the law and the facts on appeal from the Court of Chancery. This view is fortified by the declaration of article 6, section 5, *placitum* 2 of the constitution: "Final judgments in any Circuit Court may be brought by writ of error into the Supreme Court or directly in the Court of Errors and Appeals." This constitutional provision was declaratory of the common law. At common law final judgments only could be removed by writ of error to the appellate court, and the review thereof was strictly confined to errors at law.

This court, in *Flaniyan* v. *Guggenheim Smelting Co.*, 63 *N. J. L.* 647, in construing a statute similar in purport to the one in question, in that it provided that "it shall be lawful for a plaintiff in error to assign for error that the verdict is against the clear weight of the evidence," held the statute to be unconstitutional. Judge Adams, speaking for the court (at *p.* 650), says: "It is evident to any mind acquainted with legal procedure that this act declares a novel purpose, and seeks to secure it through the novel use of an old instrumentality." The purpose is novel, for, in such a case, the review has hitherto been of matter of law, and never of matter of fact. The use is novel, for the instrumentality is a writ of error, "whose sole ability," in the words of Chief Justice Beasley, "always has been and is to bring before the higher court for review in matter of law, the judgments of inferior jurisdictions." *Falkner* v. *Dorland*, 54 *Id.* 409, 410. It is evident also if this act be valid, its necessary effect will be to deprive the judgments of such inferior jurisdictions of the attribute of finality as to fact. This attribute has characterized such judgments since the earliest age of the common law. It is now proposed that they shall henceforth be final as to neither. And, speaking at page 651 (63 *Id.*) on the force and effect of section 1 of article 7 of the constitution, the learned judge continues: "It will be admitted that these provisions guarantee the integrity of the constitutional courts, of

which the Supreme Court is one. Whatever powers that court had, whatever jurisdiction that court exercised, at the date of the adoption of the constitution, were by such adoption incorporated into the fundamental law and ensured against destruction or abridgement except through a change in the fundamental law itself. To abolish the court, *to alter its organic character,* to impair its jurisdiction, to diminish its authority, are beyond legislative power, because that *character,* jurisdiction and authority form part of a body of law which, upon wise grounds, has been made immutable by any mere legislative act."

Keeping in mind the law as declared by this court in the case just quoted from and which should be controlling here, unless the doctrine therein enunciated is to be overruled, it is quite obvious that the statute under review has all the infirmities that affected the statute condemned in that case as unconstitutional. 1. The statute, in effect, attempts to alter the organic character of the court, in that, on a writ of error, this tribunal must hear and determine a question of fact, namely, whether or not a verdict is against the weight of the evidence. 2. The statute detracts from the prerogative of the Supreme Court. In the event that a trial of an indictment at bar is had in that court resulting in a conviction and judgment, and a new trial is refused, the plaintiff in error may by force of the statute have the finding of the Supreme Court reviewed upon the facts. "Judgments of constitutional courts at common law are inherently not reviewable as to the facts." *Flanigan* v. *Guggenheim Smelting Co., 63 N. J. L.* 654.

The reasoning of the majority opinion finds no support in *Harris* v. *Vanderveer's Executor, supra,* on which case it vainly relies to support the constitutionality of the present statute, for a fair reading of the opinion in the case delivered by that distinguished jurist, Chief Justice Beasley, makes it quite manifest that he recognized the marked difference between a statute which was in harmony with the constitutional design to allow appeals from a constitutional court, dealing with matters coming within the realm of equitable cognizance, a court of which the Chancellor was the Ordinary, and a stat-

ute which by its very terms attempts to change the organic character of a constitutional court.

On page 436 of the case cited the learned Chief Justice, in speaking of the Prerogative Court, used this significant language: "Is there anything, then, in the nature or history of such a tribunal as this which should make its decrees final? I do not mean whether it is proper or politic that they should be so; but is such an incident necessarily inherent in the constitution itself? If we regard it as of ecclesiastical origin, its decisions have no claim to conclusiveness. In the English system the decrees of the Prerogative Court are subject to review in the Court of Delegates. This has been the case since the time of Henry VIII. A Prerogative Court, then, is not, and never has been, from its constitution, a court of the last resort. What, then, has so modified its nature to bestow upon it such a character in this state? If I could perceive that from its *organization,* or the *character* of its *jurisdiction,* the decree of the court must be unappealable, I should feel constrained to say that the *legislature could not alter their nature and make them appealable.* Under such circumstances, a modification of the efficaciousness of the decrees of such a court would be *to alter in an essential manner the court itself. It would amount to an organic change in a constitutional tribunal."*

Now, can it be fairly denied that the attempt by statute to impose upon the Court of Errors and Appeals, in a criminal case brought before it for review, by writ of error, the duty to decide as to the weight of the evidence is not an "organic change in a constitutional tribunal?" It destroys the finality of a judgment by the Supreme Court on questions of fact hitherto unappealable and unreviewable and thereby clearly abridges the prerogative of that tribunal. Furthermore, it effects an organic change in the Court of Errors and Appeals from that of a tribunal designed by the constitution to review errors of law only, to an appellate tribunal for the review of both errors of law and errors of fact.

In the State of New York, by article 6, section 9 of its constitution, express power is conferred upon the legislature

of that state to restrict the jurisdiction of its Court of Appeals, and the right to appeal thereto, &c., therefore, section 528 of the Code of Criminal Procedure, regulating appeals in cases where the judgment is of death, and which provides that the court may grant a new trial if it is satisfied that the verdict is against the weight of the evidence, has constitutional authorization.

But enough has been said to make it clear that without a constitutional amendment authorizing the legislature to change the organic character of the constitutional appellate courts, it cannot, in the aspect of enlarging their jurisdiction, change their elemental nature. No one would have the temerity to contend that the constitutional provisions referred to forbid this court to take cognizance of *new cases,* which in the march of business and industry have sprung up since the adoption of the constitution, and will continue to spring up in the indefinite future. To adopt any such theory would tend to arrest all progress in the development of the law. It is one thing to make every case appealable whether or not it was known to the common law before the adoption of the constitution, and it is quite another thing to change the function of a constitutional court so as to render it practically a trial court. It is the latter feature of the statute which makes it invalid. The case of *State* v. *Kohl,* 59 N. J. L. 195, 445, relied on by counsel of defendant which was before this court, on writ of error, under a similar statute to the one now drawn into question but which former statute was repealed, has no bearing upon the present case, for the constitutionality of that act was not raised or discussed.

Another glaring unconstitutional feature of the act is that it violates article 1, paragraph 7 of the constitution which declares "the right of trial by jury shall remain inviolate."

It may be safely asserted that all will agree that it secured this right as it existed in this state at the time of the adoption of the constitution.

That the state is entitled to the benefit of this guaranty cannot be successfully disputed.

1 *Bish. Cr. Pro.* 892, under title "Trial by Jury," in a note says: "And in the same state the constitution further providing," that in all criminal cases, except in petit misdemeanor, &c., the right of trial by jury shall remain inviolate; "this was held to be a right available to the state, as well as to the accused party." Therefore, if, without a jury, the prisoner be tried by the court and acquitted; the state having objected to this proceeding may have the result reversed and try him again. *State* v. *Mead,* 4 *Blackf.* 309.

The state, composed of all the people, is interested in a verdict and its finality, as well as the defendant. This is especially so in a criminal case, as the criminal laws are administered for the protection of society.

The state cannot waive this provision. Any statute it may enact to evade the force of the constitutional declaration must prove abortive.

At the time of the adoption of the constitution only errors appearing on the record were reviewable by writ of error. New trials were made and heard before the judge who tried the cause. Verdicts in criminal cases were not subject to be set aside even then upon the ground of being against the weight of the evidence but only where there was error on the record. Since the adoption of the constitution of 1844, the uniform practice has been to make motions for new trials before the judge who tried the cause, and I have been unable to find a reported case in this state except State *v.* Kohl, which was upon a statute, now repealed, where a verdict was set aside because against the weight of the evidence. *State* v. *Hart,* 90 *N. J. L.* 261; *State* v. *Comstock,* 95 *Id.* 321; 96 *Id.* 299.

Where a trial court has set a verdict aside it will be found that the action of the court was rested, upon the basis that there was no proof sufficient to go to the jury of the commission of the crime by the accused. For any one familiar with the trial of criminal cases must be cognizant of the fact, that as criminals choose secret methods in committing crimes, it often happens that the state must rely on a single witness to prove the offence, whilst a defendant may resort to *alibis* and

other defences, and in nine cases out of ten his witnesses outnumber those of the state. Of course, the number of witnesses does not carry with it the weight of the evidence, but it does involve the *elemental right of a jury* to determine the credibility of the witnesses.

And, therefore, we must start with the postulate that it is unconstitutional to alter in any of its essential features the institution of trial by jury.

In *State* v. *Fowler,* 58 *N. J. L.* 423, the contention was that a struck jury was illegal because of the constitutional provision that the right of trial by jury shall remain inviolate, and the Supreme Court, per Chief Justice Beasley, said that the obvious answer to the objection was that trial by struck jury was part of the system of legal procedure derived from the English law confirmed by legislation in 1797, forty-seven years before the constitution of 1844, and that the constitutional mandate, therefore, ratified and perpetuated the right of trial by jury as in substance it then existed.

In *Brown* v. *State,* 62 *N. J. L.* 666, it was held by the Court of Errors and Appeals that the constitutional provision that the right of trial by jury shall remain inviolate, means that an act diminishing the number of a jury, *or altering any of its essential features,* would be unconstitutional. Illustrations given are of dispensing with unanimity or depriving a party of challenges for cause; but the universality of the terms used, namely, "any of its essential features," shows that the court did not wish to be understood as restricting the matter to unanimity or challenges, but intended that it should apply to any attribute of the trial by jury which was an essential feature. It would seem that the attribute of finality of a verdict falls within this description.

Now, cannot it not be said with good reason that since by the common law, in a criminal trial on the question as to whether a verdict should be set aside and a new trial granted, was confided to the judge who presided at the trial, and which was the law of this state at the time of the adoption of the constitution of 1844, the finality of the judgment in a criminal case in favor of the state—subject only to the setting aside

of the underlying verdict and the granting of a new trial by the judge who presided was an attribute protected by the constitutional provision that the right to trial by jury shall remain inviolate, for that right is certainly not alone the defendant's but as well the state's.

In *Haines* v. *Levin,* 51 *Pa. St.* 412, 414, a civil case, the Supreme Court of Pennsylvania observed:

"The great purpose of the constitution in providing that 'trial by jury shall be as heretofore, and the rights thereof remain inviolate,' was not to contract the power to furnish modes of civil procedure in courts of justice, but to secure the right of trial by jury *in its accustomed form* before rights of persons or property shall be finally decided."

In *Plimpton* v. *Somerset,* 33 *Vt.* 283, also a civil case, the Supreme Court of Vermont held:

"Any law which destroys or materially impairs the right of trial by jury, according to the course of the common law, in cases proper for the cognizance of a jury, is contrary to the twelfth article of the bill of rights and the thirty-first section of the constitution of Vermont."

In every suit or action at law there are two parties—the plaintiff and defendant. In criminal cases the state is plaintiff. If the defendant be convicted by a jury the state is thus awarded the verdict, and that verdict, and the judgment founded thereon, can only be set aside by the exercise of the power in that behalf that existed at the time our constitution was adopted, which provides that the right of trial by jury shall remain *inviolate,* which, as we have seen, has been interpreted to mean that none of its essential features may be impaired, and that must include in its very nature the attribute of finality residing in a verdict. To substitute for the judge who tried the case a bench of appellate judges who were not present at the trial, and who never saw or heard the witnesses, and whose opinion on the evidence comes from a different view or review of it, is a violation to some extent, and an appreciable one, of the right of trial by jury, because it subjects their finding to a review unknown to the common law.

The learned Chief Justice, in the majority opinion, lays great stress on the case of *Edwards* v. *State,* 45 *N. J. L.* 419, as supporting the theory that the state may, by statutory authority, waive its right to enforce the constitutional mandate that a trial by jury shall remain inviolate; but a careful reading of that case discloses that it merely decides that a defendant may, if the state consents, waive *personal rights* guaranteed by the constitution.   Nowhere in the opinion there delivered by Mr. Justice Depue does that eminent jurist hint even that a constitutional provision for the protection of the entire people of the state may be lawfully waived by a representative of the state through legislative authorization.

To have held any such view would have been destructive of our constitutional mandates, and, in effect, would have rendered the constitution a useless instrument.

The constitutional mandate that the right of trial by jury shall remain inviolate is an express restraint upon the state and its legislative agencies, to interfere with or change the fundamental characteristics and efficacy of trials by a common law jury.   And it is intermeddling with the inviolability of jury trials that the statute, under consideration plainly does. For it is apparent that in case of a conviction, the verdict of a jury upon the facts carries with it no finality, until it has gone through the appellate courts, who are required practically to retry the case, on the printed evidence, and without having had the benefit of seeing the witnesses that the jury had, and if the appellate court deems the verdict to be against the weight of the evidence to set it aside and to send it to the court of first instance for retrial.   Thus, the state policy that there should be prompt administration of the criminal law for the protection of the people against law breakers is defeated. All these considerations must have been present in the minds of the framers of our constitution which resulted in the mandate that the right of trial by jury shall remain inviolate.

The Chancellor and Justice Black authorize me to say that they concur in the views herein expressed.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER, ACKERSON, VAN BUSKIRK, JJ. 14.

*For reversal*—None.