CHARLES HAGER, PLAINTIFF-APPELLANT, v. CHARLES WEBER, DEFENDANT-RESPONDENT.

Argued December 11, 1950—Reargued April 16, 1951—
Decided May 21, 1951.

*Mr. Francis M. Seaman* argued the cause for appellant.

*Mr. John C. Stockel* argued the cause for respondent.

The opinion of the court was delivered by

HEHER, J. There was a judgment of $6,500 for plaintiff on a jury verdict returned in the Middlesex County Court in an action in tort for negligence; and on defendant's appeal the Appellate Division of the Superior Court found that the verdict was "clearly excessive" and accordingly reduced the award to $3,500, with direction for a new trial as to damages if plaintiff should refuse consent to the reduction. The trial judge had denied a motion for a new trial on the asserted

ground that "the judgment is against the weight of the evidence and is excessive and resulted from mistake, passion or prejudice." Only the *quantum* of the verdict was under attack in the Appellate Division.

We certified the cause for appeal on plaintiff's motion.

It was argued at the outset that *Rule* 3:59–5 "does not abolish the trial court's discretionary power to pass upon a jury's verdict on motion for a new trial," and the action of the trial judge in that regard is unassailable except for a "plain abuse of discretion," in keeping with the doctrine of *Nelson v. Eastern Air Lines, Inc.,* 128 *N. J. L.* 46 (*E. & A.* 1942), followed by this court in *Batts v. Newman,* 3 *N. J.* 503 (1950); that, so assessed, the refusal of a new trial here is unexceptionable; and that, at all events, the Appellate Division did not apply the principle of *Rule* 1:2–20(*a*), made applicable to the Appellate Division by *Rule* 4:2–6, providing, *inter alia,* that on a review of any cause involving issues of fact determined by the verdict of a jury, "the verdict, if contrary to the weight of the evidence, shall be set aside." After consideration of these issues, we directed argument of the question of the constitutional sufficiency of *Rule* 1:2–20(*a*), cited *supra*; and the cause came on for reargument in due course.

Plaintiff now contends that the particular provision of the rule would enlarge the jurisdiction granted to this court and the Appellate Division by the Constitution of 1947, and as well impair "the jurisdiction of trial courts by depriving the judgments of such inferior jurisdictions of the attribute of finality as to fact," and it therefore constitutes an excess of constitutional power. The cases of *Central Railroad Co. v. Tunison,* 55 *N. J. L.* 561 (*E. & A.* 1893), and *Flanigan v. Guggenheim Smelting Co.,* 63 *N. J. L.* 647 (*E. & A.* 1899), are invoked; but there is no mention of *State v. Knight,* 96 *N..J. L.* 461 (*E. & A.* 1921).

■ Appellate review concerns the remedy. It is a remedial procedure secured against legislative interference by Article VI, Section II, paragraph 2, Section III, paragraph 3, Section

V. paragraphs 1, 2, and Article XI, Section IV, paragraph 3. It had the same security under Article VI, Section I, paragraph 1, and Section V, paragraph 3 of the Constitution of 1844.

The early cases in this State laid it down that the question of whether a new trial should be granted was "a subject addressing itself to the discretion of the court, and on that account the judicial action in that sphere has never been subjected to the least superintendency." *Delaware, Lackawanna and Western Railroad Co. v. Nevelle*, 51 *N. J. L.* 332 (*E. & A.* 1889). At common law, the action thus taken is not reviewable on strict error, for, as was pointed out by Mr. Justice Dixon in that case, "Neither the decision nor the state of the case on which it was rendered would form part of the record, and at common law the record only was reviewable on error," and therefore, "no matter whether questions of law were involved or not, the writ of error would bring up nothing by which the questions would be disclosed."

Appeals in equity and from the courts which derive their procedure from the civil law bring up the entire record of the proceedings for a reconsideration of the case both on the law and the facts. *Sohland v. Baker*, 15 *Del. Chan.* 431, 141 *A.* 277, 58 *A. L. R.* 693 (1927); *Arnsperger v. Crawford*, 101 *Md.* 247, 61 *A.* 413 (1905). The writ of error is not of statutory origin; it is an original writ at common law, grantable *ex debito justitiae*, to bring up final judgments of inferior tribunals clothed with judicial power, for review in matters of law alone apparent upon the record. *Falkner v. Dorland*, 54 *N. J. L.* 409 (*Sup. Ct.* 1892); *Evans v. Gee*, 14 *Pet.* 1, 10 *L. Ed.* 327 (1840). Appeals from judgments at law are unknown to the common law. The writ of error *coram nobis* or *coram vobis* at common law affords means for the correction of error of fact in the court in which the judgment was rendered. *Sanders v. State*, 85 *Ind.* 318 (1882); *Keane v. State*, 164 *Md.* 685 (1933). The judgment thereon is not reviewable at common law. *Pickett's Heirs v. Legerwood*, 7 *Pet.* 144, 8 *L. Ed.* 638 (1833).

In *Central Railroad Co. v. Tunison, supra,* a writ of error was sued out of the old Supreme Court to review the refusal of a new trial by the circuit court under c. 20 of the Session Laws of 1890 (*Pamph. L., p.* 33), which expressly granted the right of review before final judgment for error either of law or of fact; and the Court of Errors and Appeals ruled that the constitutional jurisdiction of the circuit courts included "the right to decide finally and without review whether a new trial shall be granted, and that right cannot be taken from them without substantially and materially impairing their powers," and so that statute was void. But in *Kohl v. State,* 59 *N. J. L.* 445 (*E. & A.* 1896), c. 163 of the Session Laws of 1894 (*Pamph. L., p.* 246; *Gen. Stat.* 1895, p. 1154), directing a new trial in a criminal case where the entire record of the proceedings had upon the trial, returned with the writ of error, revealed "manifest wrong or injury * * * upon the evidence adduced upon the trial," a judgment of conviction of murder of the first degree was reversed on the ground that the evidence was insufficient to "justify the verdict." In support of the statute, Mr. Justice Dixon declared: "To warrant a conviction of crime, the testimony should prove the guilt of the accused beyond a reasonable doubt. If it fails to do this, *i. e.,* if it be of such a nature that, when fully and fairly considered, it will not satisfy any thoughtful mind, beyond reasonable doubt, of the guilt of the accused, then a conviction does manifest wrong, according to our system of administering criminal law. The jurors compose the appropriate tribunal for the determination of controverted questions of fact, but in a civil cause they cannot justly find a verdict for the plaintiff without evidence capable of leading a prudent person to believe in the plaintiff's claim, and in a criminal cause they cannot justly find a verdict for the state upon evidence which, viewed in any rational aspect, must leave reasonable doubt of guilt in every considerate mind. Against such verdict the party aggrieved can, by the common law, appeal to the trial court for a new trial, and under the statute above cited such an appeal can

now be made in criminal causes to the appellate tribunal."
Chancellor McGill, in a dissenting opinion holding that the
case turned upon the credibility of the witnesses, said that
the statute did not contemplate that, on the issue of credi-
bility, the opportunity to observe the witnesses was a negli-
gible factor, "and that upon the remnant the case is to be
determined *de novo*" but rather that "it must be 'manifest'
that it clearly appears that the conviction is wrong, either
because it is against the clear weight of evidence or because
it has been influenced in some way by passion, prejudice,
mistake, perversion or corruption." He cited the case of
*People v. Cignarale,* 110 *N. Y.* 23 (1888), holding that
neither the appellate court nor the court of first instance
"can lawfully usurp the appropriate function of the jury,
and neither can substitute its own judgment for that of the
jury where the facts are reasonably capable of diverse and
opposing inferences." But that, as we shall see, is not the
nature or scope of the review provided by the rule under
consideration.

Then came the case of *Flanigan v. Guggenheim Smelting
Co.,* cited *supra.* There, *c.* 139 of the Session Laws of 1899
(*Pamph. L., p.* 323), purporting to invest the Court of Errors
and Appeals with power on error to reverse a judgment
founded on the verdict of a jury if the verdict was against
the clear weight of the evidence or was excessive, was set
aside as an unconstitutional impairment of the integrity of
constitutional courts in that it detracted from their faculty
to render judgments "final as to fact, though not final as
to law." The statutory regulation was deemed an assault
upon the "organic character, * * * jurisdiction * * *
and authority" of the old Supreme Court made immutable
by the Constitution of 1844. It was thought that the act
deprived "certain judgments that are within the protection of
the Constitution" of "a quality that has hitherto inhered in
them," *i. e.,* "the attribute of finality as to fact;" and that
it was aimed "not at the mere machinery of justice, not at the
boundaries of jurisdiction, but at the conclusiveness of the

proceeding—at the effect of the record itself." In fine, it was considered that a statute "calculated to make a constitutional court subordinate in matters of fact as to which it was originally supreme" would to that extent "alter the constitution of such court, change its nature, diminish its authority and impair its jurisdiction;" also, that a legislative regulation which would modify a judgment "in respect to important matters that are present in every case" and make the judgment "as to them no longer the end of litigation but a mere intermediate phase of legal strife" in substance and effect tends "to alter the character of the judgment and qualify the authority of the court that has pronounced it," and so judgments of constitutional courts of common law "are inherently not reviewable as to the facts." Thus the case there under review was distinguished from *Harris v. Vanderveer's Executor*, 21 *N. J. Eq.* 424 (*E. & A.* 1869), holding that the decrees of the former Prerogative Court were inherently appealable, and therefore a statute granting an appeal from that court to the Court of Errors and Appeals was constitutional.

But in the later case of *State v. Knight*, cited *supra*, the Court of Errors and Appeals invoked the principle of the *Kohl* case to sustain c. 349 of the Session Laws of 1921 (*Pamph. L., p.* 951; *R. S.* 2:195–19), providing that when the entire record of the proceedings had upon the trial in a criminal case has been returned with the writ of error, the defendant may assign as error that the verdict was against the weight of the evidence, and that a new trial be awarded if such be the case. The contention was made that the act invaded the constitutional right of trial by jury (*Constitution of* 1844, *Art.* I, *paragraphs* 7, 8), in that the verdict of the jury in a criminal case is final and cannot be nullified by judicial action. Chief Justice Gummere said: "But this is not so. Mr. Justice Dixon, in his opinion in *Kohl v. State*, 59 *N. J. L.* 446, points out that, although the jurors compose the appropriate tribunal for the determination of controverted questions of fact, they cannot justly find a verdict for

the state in a criminal case upon evidence which, viewed in any rational aspect, must leave reasonable doubt of guilt in every considerate mind; and that against such a verdict the party aggrieved can, by the common law, appeal to the trial court for a new trial," and the "mere substitution" of the appellate court for the trial court in the performance of this function does not violate the constitutional interdict.

The indubitable principle of the *Kohl* and *Knight* cases is that the "finality" inherent in the then constitutional courts did not render immune to appellate review a verdict that plainly transcended the province of the jury in that it was not "justly" sustainable on the evidence. There was no constitutional protection of error so fundamental. The appellate tribunal cannot invade the constitutional office of the jury; it may not merely weigh the evidence where it is fairly susceptible of divergent inferences and substitute its own judgment for that of the jury. But, if the verdict be so far contrary to the weight of the evidence as to give rise to the inescapable conclusion of mistake, passion, prejudice, or partiality, it cannot serve to support the judgment, and appellate correction of the error is not an interference with the constitutional security of the inferior court or the attribute of finality on the facts inherent in its judgments or the constitutional right of trial by jury. As respects the appellate corrective process, there is no essential difference between a verdict that comes from misdirection and a verdict that constitutes a palpable perversion of the jury function. A verdict that rests upon testimony competent to sustain the inference implied in such a finding is ordinarily conclusive; *e converso*, it is not. *Smith v. Lorillard Co.,* 67 *N. J. L.* 361 (*Sup. Ct.* 1902). The court may not set aside a verdict merely because, in its opinion, the jury upon the evidence might well have found otherwise. *Knickerbocker Ice Co. v. Anderson,* 31 *N. J. L.* 333 (*Sup. Ct.* 1865). This conception of the weight of the evidence governs the trial court as well as the appellate court; and it applies to civil and criminal causes. *State v. Karpowitz,* 98 *N. J. L.* 546 (*E. & A.*

1923); *Boesch v. Kick,* 97 *N. J. L.* 92 (*Sup. Ct.* 1922), affirmed 98 *N. J. L.* 183 (*E. & A.* 1922) ; *Queen v. Jennings,* 93 *N. J. L.* 353 (*Sup. Ct.* 1919) ; *Floersch v. Donnell,* 82 *N. J. L.* 357 (*Sup. Ct.* (1912)) ; *Juliano v. Abeles,* 114 *N. J. L.* 510 (*Sup. Ct.* 1935). And this is so notwithstanding the difference in the standard of proof in civil and criminal cases, although that has a bearing in other circumstances. *Helvering v. Mitchell,* 303 *U. S.* 391, 58 *Sup. Ct.* 630, 82 *L. Ed.* 917 (1937).

Now, by the Constitution of 1947, the common-law writ of error has been superseded by the appeal therein provided. *Article VI, Section V, paragraphs* 1, 2. Under paragraph 3 of the same section, the Supreme Court and the Appellate Division of the Superior Court may exercise "such original jurisdiction as may be necessary to the complete determination of any cause on review." This grant of original jurisdiction is significant of a design to provide a review of matters of fact as well as of law, in accordance with the historic function of an "appeal." For the history and the varied uses of the "appeal" in American and English jurisprudence, see *Vaill v. McPhail,* 34 *R. I.* 361, 83 *A.* 1075 (1912). There is no ground whatever for supposing that the framers of the Constitution had in mind an "appeal" in law cases that would merely perform the office of the old writ of error in mode and scope of review.

But, by Article I, paragraph 9 of the Constitution of 1947, the right of trial by jury is made inviolable; and the review on appeal from a judgment rendered on a jury verdict is *ex necessitate* restrained by this constitutional guaranty. As held in the *Kohl* and *Knight* cases, an inquiry into the weight of the evidence, either in a civil or a criminal case, governed by the cited standard, is not in derogation of the right of trial by jury secured by the organic law. The award of a new trial on appeal where the verdict clearly gives rise to the inference of mistake, passion, prejudice, or partiality does not constitute an undue interference with the constitutional right of trial by jury or the constitutional integrity of

the inferior tribunal, for the jury has transcended its constitutional sphere to the substantial injury of the party adversely affected; and on the plainest principles of justice this fundamental error is remediable by the appellate process. Indeed, that came to be the rule under the Constitution of 1844. The award or refusal of a new trial on the ground that the verdict was against the weight of the evidence was reviewable on error for abuse of discretion. *Gaffney v. Illingsworth,* 90 *N. J. L.* 490 (*E. & A.* 1917); *Robinson v. Payne,* 99 *N. J. L.* 135 (*E. & A.* 1923); *Gee v. Moss,* 108 *N. J. L.* 160 (*E. & A.* 1931); *Gormley v. Gasiorowski,* 110 *N. J. L.* 287 (*E. & A.* 1937); *Nelson v. Eastern Air Lines, Inc., supra; Salvato v. New Jersey Asphalt & Paving Co.,* 135 *N. J. L.* 185 (*E. & A.* 1947); *Batts v. Newman, supra.* In the last-cited case, the judgment under review was entered before the Judicial Artical of the Constitution of 1947 became effective. The exercise of judicial discretion "implies conscientious judgment, not arbitrary action. It takes account of the law and the particular circumstances of the case and is 'directed by the reason and conscience of the judge to a just result.' " *Hoffman v. Maloratsky,* 112 *N. J. Eq.* 333 (*E. & A.* 1933).

Whether a verdict is against the weight of the evidence, as thus defined, is in essence a judicial question that is generally deemed an integral part of the constitutional remedial appellate process. *State, ex rel. Cartmel v. The Aetna Casualty & Surety Co.,* 84 *Fla.* 123, 92 *So.* 871, 24 *A. L. R.* 1262 (1922); *Hanna v. Central States Electric Co.,* 210 *Iowa* 864, 232 *N. W.* 421 (1930); *Ernst v. Hudson River R. Co.,* 24 *How. Pr.* (*N. Y.*) 97, 104 (1862).

Under the rule, the trial judge and the appellate tribunal are controlled by the same criterion. The inquiry for each is whether the verdict is against the weight of the evidence in the stated sense. And this is now an appellate function even though there was no motion for a new trial in the court of first instance.

■ We find the verdict so excessive as irresistibly to give rise to the inference of mistake, passion, prejudice, or partiality, and by that standard to be palpably against the weight of the evidence. *Vide Bowes v. Public Service Railway Co.,* 94 *N. J. L.* 378 (*Sup. Ct.* 1920) ; *Salvato v. New Jersey Asphalt & Paving Co., supra.* Defendant does not complain of the limitation of the new trial to damages.

The judgment of the Appellate Division is affirmed.

CASE, J. (concurring). I agree that a jury verdict may be impeached as contrary to the weight of the evidence when, and only when, it is so strongly against the weight as to show mistake, passion, prejudice or partiality; this, because of the virtue imputed by our Constitution to a jury verdict. But, as I read the majority opinion in the light of the record, it abandons the principle that an application to the trial court for a new trial is within the discretion of that court and that the decision thereon may not be disturbed except for an abuse of that discretion. That rule is very old and of wide acceptance. The universality of it may be gathered from the text and the citation of the cases in 46 *C. J. p.* 406 § 465 and 5 *C. J. S. p.* 516, Title *Appeal and Error* § 1619.

There is sound reason for the rule. There can be no doubt that the atmosphere of a trial and of the courtroom generally is better known to the trial judge than can possibly be reflected by any printed report of the proceedings. If the record discloses legal error, the party may go direct to an appellate court; if he prefers to make an application to the trial judge for a new trial, he should be held to the decision there rendered unless the decision is so out of line as to constitute, in the opinion of the appellate court, an abuse of discretion.

There seems to have developed a reluctance on the part of our New Jersey appellate courts to make that holding lest perchance it be disagreeable to the trial judge. Why that feeling should exist, I do not know. Everyone conversant with court proceedings knows what the expression "abuse of

214

214

discretion" means and that there is nothing more reproachful in it than there is in a finding that the trial court committed harmful error. In any event, judges have for generations borne up bravely under that castigation and are still, almost everywhere, including the federal courts, enduring it with composure. I deem it much more hurtful to say that we no longer trust the trial judge with a field of discretion in which he may move without reversal. But the language need not be retained; a substitute phrase could easily be coined. The important thing is to preserve an old and useful phase of jurisprudence—the discretion of the trial judge.

Some of the law was stated in *Nelson v. Eastern Air Lines, Inc.,* 128 *N. J. L.* 46 (*E. & A.* 1941), voted by a unanimous court and followed in *Natale v. Automobile Finance Co.,* 133 *N. J. L.* 253 (*E. & A.* 1945); *Hartley v. Newark Morning Ledger Co.,* 134 *N. J. L.* 217 (*E. & A.* 1946); *Salvato v. New Jersey Asphalt & Paving Co.,* 135 *N. J. L.* 185 (*E. & A.* 1946); *Batts v. Joseph Newman, Inc.,* 3 *N. J.* 503 (1950), and other cases.

I am voting to affirm the judgment of the Appellate Division because I consider that the amount of the verdict when compared with the evidence clearly indicates that the jury was moved by mistake, passion, prejudice or partiality and that the trial court exercised an abuse of discretion in not granting a new trial for that reason; and, when I say that, I am saying nothing else than that the court's ruling went far enough from the mark to become reversible error.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For reversal*—None.