22 N.J. Super. 149 (1952)
91 A.2d 585
CORNELIUS T. MONIHAN, PLAINTIFF-APPELLANT,
v.
PUBLIC SERVICE INTERSTATE TRANSPORTATION COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, AND MELVIN L. RANDOLPH, JOINTLY, SEVERALLY AND IN THE ALTERNATIVE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 29, 1952.
Decided October 9, 1952.
*150 Before Judges McGEEHAN, BIGELOW and SMALLEY.
Mr. Horace G. Brown argued the cause for the appellant.
Mr. Luke A. Kiernan, Jr. argued the cause for respondents.
The opinion of the court was delivered by SMALLEY, J.S.C.
This is an appeal from the order of the Superior Court, Law Division, Gloucester County, granting a new trial and setting aside a verdict of $15,000 in favor of the plaintiff and against the defendants.
Application was made to this court under Rule 4:2-2(b) to permit an appeal on behalf of the plaintiff. On March 25, 1952, the order was entered.
On November 5, 1950, plaintiff sustained substantial injuries while he was attempting to board a bus owned by the defendant Public Service Interstate Transportation Company and operated by the defendant Melvin L. Randolph. The accident occurred at or near the intersection of Broad and Delaware Streets in the Borough of Paulsboro in the early evening or late in the afternoon, in any event it being after dark.
*151 Plaintiff testified that he saw the bus coming as he came out of a cigar store near the bus stop and that immediately prior to boarding the bus he saw a woman passenger enter, that the bus was standing still when he first stepped on and the woman passenger had paid her fare and was walking to the rear when the bus started up while plaintiff was standing on the step of the bus; that the defendant, Randolph started the bus and put into motion the mechanism by which the door was closed and that the impetus of the closing door threw the plaintiff to the street.
There was evidence that one of the plaintiff's shoes was found on the step of the bus after the accident. Photographs were introduced into evidence showing this bus with its door open and closed, indicating that if the door of the bus were closed, a passenger would have no place to stand or much less enter the vehicle.
Plaintiff further testified that the bus was standing still, that the door was open, that as he was standing on the step of the bus the driver shut the door on him, started the bus, that he was thrown and dragged with the resulting injuries to his body. The extent of these injuries are not in dispute.
Mrs. Zane, a passenger, testified that she saw the plaintiff's foot and leg and one or both hands caught in the door. It is true that when the defendants interviewed Mrs. Zane shortly after the occurrence of the incident, she gave a statement that she did not know anything about the happening of the accident. She explained this, however, when under cross-examination, by saying that she did not wish to become involved in the matter, but now that she was under oath, she would tell the truth.
Mrs. Valentino, the passenger preceding the plaintiff, testified that she saw plaintiff's hand caught in the door and that some one cried out "there is someone else getting on."
The defendant Randolph testified that after the woman passenger got on his bus, no other person attempted then to board the conveyance. He testified that he "flipped the lever that closes the door" at the time that he started the bus *152 and after proceeding about eight feet into the street he heard a bump, stopped his bus and found the plaintiff in the road, and that he had never seen the plaintiff until this moment.
Defendant called as a witness one Albert Tarantelli, who was at the intersection of Broad and Delaware Streets awaiting the "go" signal of a traffic light. He says that he saw the plaintiff chasing after the bus which was in motion; that plaintiff was only about "to get a hand in" and one foot on the bus, that the doors closed and "caught him and knocked him down," and that plaintiff was not dragged as he so testified.
Mrs. Elmer Pratt, a passenger, testified that she occupied the third seat on the right side of the bus, that as the bus started to pull away she saw the plaintiff run past the window where she was seated, that she saw the plaintiff's hand "coming out the door," and that she felt the bump. She further testified that the bus driver was looking to the left when he started away from the curb and that the doors were open at that time.
Fannie Byrd, who had been seated in the second seat adjacent to the aisle on the right side of the bus, testified that as the bus pulled away she glimpsed a figure running alongside and that she then heard some one scream that a man was caught.
There were other witnesses called by both sides who gave conflicting testimony.
Here we have several disinterested witnesses giving testimony in sharp contradiction as to the happening of this accident. Surely, this would be an instance where these factual disputes must be submitted as they were submitted to a jury for a determination, it being for the jury and the jury alone to evaluate, weigh the evidence and resolve under the charge of the trial court the factual dispute.
The jury by its verdict of ten to two found for the plaintiff. Apparently, it chose to believe the plaintiff and his witnesses *153 and declined to accept the defendants' version of the happening of the accident.
Thereafter, on December 7, 1951, defendants gave notice of a motion for a new trial on the following grounds:
(1) That the verdict rendered by the jury is against the weight of the evidence.
(2) That the verdict rendered by the jury is excessive.
(3) That the verdict rendered by the jury is the result of mistake, partiality, prejudice and passion.
On February 1, 1952 the court rendered its conclusions, the last two paragraphs of which we set forth here.
"Lending full credence to the testimony of Mrs. Zane, the evidence adduced at this trial would disclose not more than that the story of one side was equally strong as the other. But, viewing and considering the testimony of both Mrs. Zane and the plaintiff, the former's repudiating her statement and the latter's explanation of how, it is quite apparent that the theory advanced is contrary to more credible circumstances given in evidence. Surely the testimony of Mrs. Pratt, Mrs. Byrd and Mr. Terentella, who, in his car at the intersection waiting for the traffic light to change, observed the plaintiff `chasing' the bus, cannot be slighted.
The trite, but pithy saying: `There are two sides to every case, and one other,  the truth,' seems pertinent here. A just valuation of all the testimony, evidence, marshalling of witnesses for and activities incident to the trial convinces the court that a new trial should be granted on the grounds asserted in points one and two of the motion pressed."
We think that the trial court inadvertently stated that the motion for a new trial was granted on the grounds numbered one and two. The court did not think that the verdict as to damages was excessive (point 2), but did think that the verdict was against the weight of the evidence (point 1) and that the verdict was the result of mistake, partiality, prejudice and passion (point 3).

Rule 3:59-1
"(a) * * * On a motion for a new trial in an action tried before a jury, the trial judge shall not set aside the verdict of the jury as against the weight of the evidence unless, having given due regard to the opportunity of the jury to pass upon the credibility of *154 the witnesses, it clearly and convincingly appears that the verdict was the result of mistake, partiality, prejudice or passion."
We think that in Flexmir, Inc., v. Lindeman & Co., 8 N.J. 602 (1952), Mr. Justice Oliphant, speaking for the court in an instance where the Appellate Division concluded that the plaintiff's proofs were not sufficiently supported by the evidence and set aside the judgment and granted a new trial, clearly lays down the rule which must guide this court when confronted with the problem here presented. The justice, 8 N.J. at page 605, said as follows:
"The Appellate Division obviously indulged in weighing the evidence without regard to whether or not the result arrived at by the jury after weighing the evidence was the result of mistake, partiality, prejudice or passion. In so doing it transcended the legitimate bounds of its review of a jury verdict and its determination infringed upon plaintiff's constitutional right of a trial by jury. There is ample evidence in the case on which the jury could have premised a verdict in favor of the plaintiff. * * * The testimony with respect to the pertinent issues was not only confusing but conflicting, and necessitated the resolution of doubts and disputes by the jury, a function that cannot legitimately be done by an Appellate Court on a review of a jury verdict."
The mere fact that the court might have found differently than did the jury on the evidence adduced is not sufficient grounds for granting a new trial, and this rule applies to the trial court as well as to an appellate court. Hager v. Weber, 7 N.J. 201 (1951).
We think the evidence here is such as would support a jury finding for the plaintiff. We find no evidence of mistake, partiality, prejudice or passion upon the part of the jury. All that we do find is several disinterested witnesses on each side definitely contradicting each other as to how this plaintiff suffered his injuries. Where the evidence is, as here, fairly susceptible of divergent inferences, the trial court may not weigh such evidence and substitute its own judgment for that of the jury. Hager v. Weber, supra.
We are not now enunciating any new formula concerning the troublesome problem of reviewing the action of the *155 trial court wherein it takes away from a party his judgment as rendered by a jury. We are saying, however, that here in this instance there is nothing in the record, nor in the conclusions filed by the trial court, that portrays any indication of anything but a factual dispute concerning the happening of an accident, and in such circumstances where there is evidence on both sides which would justify a verdict for either party, a trial court may not set aside the findings of the jury.
Reversed and the judgment for the plaintiff reinstated.