## COMMONWEALTH *versus* WILLIAM J. SNELLING.

In a legal sense, any unlawful act done wilfully to the injury of another, is, as against that person, *malicious;* and it is not necessary that the perpetrator of such act should be influenced by ill-will towards such person, or that he should entertain or pursue any general bad design.

In an indictment for a libel, evidence that the object of the defendant in publishing the alleged libel was, to attack vicious persons and establishments injurious to the morals of the community, is inadmissible to rebut the presumption of malice.

The *St.* 1826, *c.* 107, [Revised Stat. *c.* 133, § 6,] provides, that in prosecutions for libel, the defendant may give the truth in evidence; but that such evidence shall not be a justification, unless it shall be made to appear, that the publication was made with good motives and for justifiable ends. On an indictment for a libel, no evidence of the truth of the charges contained in the libel was produced by the defendant, but he offered to prove, that they were communicated to him by so respectable and credible a person, and under such circumstances, as to leave no doubt in his mind of their truth. It was *held,* that the evidence was inadmissible.

So, evidence of the general bad character of the persons against whom the charges are made, is inadmissible.

THIS was an indictment for a libel published in a paper called the New England Galaxy.

The alleged libel was headed with the words, " Look out for thieves," and charged one Harrison and one Allen with having boasted, that they had won certain sums of money by gaming, on particular occasions. It also charged them with having drugged a horse previously to a race in which he was to run, by means of which they won a large sum of money, which they had betted upon the race.

At the trial, before *Wilde* J., the defendant introduced evidence for the purpose of proving the truth of the first charge.

The defendant also offered to prove, that the charges contained in the alleged libel were communicated to him by so respectable and credible a person, and under such circumstances, as to leave no reasonable doubt in his mind, of their truth. But this evidence, so far as it related to the charge of cheating in the horse-race and drugging the horse, was rejected by the judge, there being no evidence whatever of the truth of this charge.

The defendant then offered evidence to prove, that Allen and Harrison were, in their general characters, rogues and cheats ; but this evidence also was rejected as inadmissible.

The defendant contended, that inasmuch as all the defini‑ tions of *libel* make malice a necessary ingredient, the jury could not, consistently with law, convict the defendant, unless they were convinced that there was malice in the publication of the alleged libel ; and that error honestly believed, and published from good motives and for justifiable ends, could no more be called guilt, than truth published from malicious motives and for unjustifiable ends, could be called innocent.

But the jury were instructed, that the publication of a false report, tending to defame the character of an individual and to expose him to hatred and contempt, might be presumed to be malicious ; that proof, that the publisher had heard of the truth of the charge contained in such publication, and that he believed in its truth, without knowing it to be true, would not amount to a legal defence or justification, and was incom‑ petent evidence to rebut the presumption of malice ; and that the defendant, in order to justify himself under *St.* 1826, *c.* 107, must prove the truth of the charges, and that they were published with good motives and for justifiable ends.

The jury returned a verdict of guilty.

To these rulings and instructions the defendant excepted.

*April 5th.*      *Child,* for the defendant, to the point, that malice is an es‑ sential ingredient in the crime of *libel,* cited 4 Bl. Comm. 21, ¹50 ; 2 Hawk. P. C. c. 73, § 1 ; *Commonwealth* v. *Clap,* 4 Mass. R. 168 ; *People* v. *Croswell,* 3 Johns. Cas. 354 ; Stark. on Slander, 197 ; 2 Stark. on Evid. 738, 741 ; 2 Kent's Comm. 21, 22 ; *The King* v. *Abingdon,* 1 Esp. R. 228 ; 12 Howell's State Trials, 426 ; *Tabart* v. *Tipper,* 1 Campb. 350 ; to the point, that general reports that the plain‑ tiff in an action of libel was guilty of the offence imputed to him, were admissible in evidence on the question of damages, and therefore that such evidence was admissible to rebut the presumption of malice in a criminal prosecution, he cited *Leicester* v. *Walter,* 2 Campb. 251 ; —————— v. *Moor,* 1 Maule & Selw. 285 ; *Bailey* v. *Hyde,* 3 Connect. R. 463 ; *Wyatt* v. *Gore,* 1 Holt's Cas. 299 ; *Skinner* v. *Powers,* 1 Wendell, 451 ; to the point, that evidence that an alleged libel was published through mistake or inadvertently, was admissi‑ ble to disprove malice, he cited *Rex* v. *Abingdon,* 1 Esp. R.

228 ; *People* v. *Croswell*, 3 Johns. Cas. 365 ; *Gilman* v. *Lowell*, 8 Wend. 573 ; *Kerr* v. *Shedden*, 4 Carr. & P. 528 ; *Commonwealth* v. *Clap*, 4 Mass. R. 169 ; *Jackson* v. *Stetson*, 5 Mass. R. 48 ; *Bodwell* v. *Osgood*, 3 Pick. 384 ; and to the point, that evidence of the general bad character of the plaintiff is admissible in civil actions for libel, he cited *Bodwell* v. *Swan*, 3 Pick. 376 ; *Wolcott* v. *Hall*, 6 Mass. R. 514 ; *Larned* v. *Buffinton*, 3 Mass. R. 546.

*Austin*, (Attorney-General), for the commonwealth, cited *Fisher* v. *Clement*, 10 Barn. & Cress. 475 ; *J'Anson* v. *Stuart*, 1 T. R. 750, cites *Newman* v. *Bailey* ; *Mountney* v. *Watton*, 2 Barn. & Adolph. 673 ; *Maitland* v. *Goldney*, 2 East, 437 ; *Woolnoth* v. *Meadows*, 5 East, 471 ; *Dole* v. *Lyon*, 10 Johns. R. 447.

SHAW C. J. delivered the opinion of the Court. This case comes before the Court upon a bill of exceptions, by which the defendant, after verdict, has brought before the Court various objections to the decisions and instructions of the judge who tried the cause. These objections have had the fullest attention of the Court, as the importance and interesting nature of the subject required, and I am now to pronounce the result to which they have come.

1. The counsel for the defendant, in the first place, excepts to the instruction of the judge, on the subject of malice ; and in his full and elaborate argument to the Court, has gone at great length, into the nature of crime in general, and the offence of libel in particular, to show that malice is an essential ingredient in the crime of libel, and has cited numerous authorities to support this position.

It may be conceded at once, that malice is of the essence of libel, and that any definition or any charge of libel, which should not embrace this essential characteristic, would be defective. But, admitting this position in its fullest extent, we think it does not conduct the defendant to the conclusion at which he aims. His learned counsel contends, that his object was to attack vicious persons and pernicious establishments, injurious to the morals of the community, and to the best interests of society, that his purpose therefore was philanthropic and benevolent, and that he should have been allowed to sub-

*Common-
wealth
v.
Snelling*

*June 19th*

Common-
wealth
v.
Snelling.

mit these considerations to the jury, to rebut the presumption of malice. We think the fallacy of this argument consists in overlooking the plain and obvious distinction between the legal and the popular meaning of the term " malice."

In a legal sense, any act done wilfully and purposely to the prejudice and injury of another, which is unlawful, is, as against that person, malicious.

It is not necessary, to render an act malicious, that the party be actuated by a feeling of hatred or ill-will towards the individual, or that he entertain and pursue any general bad purpose or design. On the contrary, he may be actuated by a general good purpose, and have a real and sincere design to bring about a reformation of manners ; but if in pursuing that design, he wilfully inflicts a wrong on others, which is not warranted by law, such act is malicious.

A man may, by his example and by his conduct, be doing great injury to society ; he may in fact be guilty of the most ruinous crimes, and that well known to an individual ; that individual may be actuated by the most pure and single-hearted desire to rid society of so mischievous a character, and entertain the firmest conviction, that he would be doing great good by it ; and yet it is very certain, that in contemplation of law, any attempt upon his life, his liberty, his person or property, made in the accomplishment of such a purpose, would be unlawful, and therefore malicious. This is founded upon a principle essential to the very existence of a government of laws and of civil liberty, that no man can be punished except by the operation of law, and after a trial according to the forms of law, with such aids and shields as the rules of law afford him ; that individuals cannot take the execution of the laws into their own hands ; and that it is the duty of every good citizen, if he knows of any offence against society, not to assail the offender, but to bring the matter before the proper tribunals, for inquiry, trial, and punishment.

2. The next general ground of the defendant's exception, arises upon the construction of the statute, allowing the truth to be given in evidence, on a criminal prosecution for libel *St*. 1826, *c*. 107.

The exception shortly stated is, that the judge instructed the jury in point of law, that upon the true meaning and construction of this statute, proof of the defendant's having heard and been informed of the facts alleged in the publication, upon what he considered credible and good authority, and also that he believed the facts to be true, was not admissible evidence, to rebut the presumption of malice ; and that, in order to justify himself under the statute, he must prove the charges to be true, and that he published them with good motives and for justifiable ends. It appears to the Court, upon the fullest consideration, that this can hardly be said to be so much the construction of the statute, as the plain and literal repetition of its text.

It had long been a question of great consideration among both jurists and statesmen, whether it would be most expedient to allow the truth to be given in evidence in defence, on a criminal prosecution for libel, or not. By the common law it was not admissible, and that rule, with the rest of the common law, had been introduced and practised on here. To a certain extent, and on considerations of policy, it had been relaxed in this commonwealth, in cases of publications affecting the character and qualifications of persons candidates for public and elective offices. *Commonwealth* v. *Clap*, 4 Mass. R. 163.

In civil actions, and against a party coming into a court of justice on a claim for damages, it had long been held as a rule of the common law, that the truth of the facts imputed constituting the slanderous or libellous charge, might be pleaded by way of justification, and if proved, constituted a good bar to the action. In such case, of course, the motive and purpose were immaterial and could not be the subject of inquiry. The rule proceeded upon the principle, that whatever was the motive, if the charge against the individual suing was true, if he was in fact guilty of the crime or disgraceful conduct imputed to him, he had sustained no damage, for which he could claim redress in a court of justice. But in such case, it is a fixed rule, that the defendant must plead the truth, in bar, and must detail the facts in his special plea, with all the formality and precision

29 *

requisite in an indictment, and must sustain it by stric proof of the facts thus charged.

Such was the state of the law when this statute was passed, and to which it obviously had reference.

But a civil and a criminal prosecution are obviously different in their purpose and end. In the former, an individual seeks redress for a supposed wrong done to himself; in the other, the public seek to restrain and prohibit acts, which would destroy the peace and harmony of society. The *argumentum ad hominem* which would properly rebut the claim of an individual to damages, would not apply to the commonwealth.

In this state of things, the statute was passed, providing, that in every prosecution for libel it shall be lawful for any defendant on trial to give in evidence in his defence, the *truth of the matter contained in the publication charged as libellous*; provided always, that such evidence shall not be a justification, unless in the trial it shall be further made satisfactorily to appear, that it was published with good motives and for justifiable ends.

The first remark to be made on this statute regulation and amendment of the common law is, that it in no respect abridges the right of the defendant, but he may still make any and every defence which he could make before. It enlarges his right, and gives him the benefit of another de fence, if he thinks fit to make it, and his case is such as to give him such benefit.

But how is this defence to be made? By proof of the truth of the matter, charged as libellous; not his belief of the truth, not his information, nor the strength of the au thority upon which such belief was taken up. No question can arise, as to the good motive or justifiable end, until the truth is proved. The proviso referring to the motive and purpose, is a restriction on the right of the defendant. That is, he shall not be justifiable in publishing even the truth, concerning another, which tends to bring him into hatred, contempt, or ridicule, unless he can show in addition to proof of the fact, proof that this was published with good motives and for justifiable ends.

This being the plain and obvious meaning and legal effect

of the statute, it becomes unnecessary to speculate upon the reasons of the legislature, or to show how ineffectual the law would be to guard against the abuses of the press and the freedom of publication, if information and belief would amount to a justification. General reports, and numerous publications of a matter of fact, respecting another, tend to beget belief, and to give a form and substance to charges , and the continuance and repetition of such publications, if not restrained, may well be considered as giving some authority to such belief. We think, for obvious reasons, the statute intended to put upon the party making the charge, which is to consign another to infamy, by a public stigma, the responsibility of making strict proof of the facts imputed, and to give him the benefit of it, if he can show a good motive and purpose in publishing it. The instruction therefore, we think, was right, in stating that the party must be held to proof of the facts, and not his information or belief of the facts, however credible the authority on which he imbibed such a belief.

3. Another exception was, that the defendant was pro hibited from giving evidence of the bad character of the party against whom the libel was published. This, if we rightly understood it, was put upon two grounds : 1. That such evidence had a tendency to prove the facts charged , and 2. In analogy to the mode of trial in a civil action, where upon the question of damages, the defendant has a right to give in evidence the bad character of the plaintiff, so the defendant in effect has the benefit of such proof on the issue.

But we think the evidence was not admissible on either ground. It has already been stated, that to make out a justification under the statute, it is necessary to prove the facts, precisely and strictly ; and in this respect the proof, though in the form of trial it is given on the general issue, must be as strict and precise, as if pleaded in a civil action. The general bad character of the parties charged in the libel, has no tendency to prove affirmatively the facts charged There is no precedent, I believe, where such proof has

Common-
wealth
*v.*
Snelling.

been admitted to establish an affirmative charge of crime or offence.

2. Many authorities were cited to show, that this proof would be admissible in a civil prosecution. This was unnecessary. The rule is well settled. But the principle on which it is admitted clearly shows, that it cannot be admitted in a criminal prosecution. It has already been stated, that the two species of prosecution are in their object and purpose distinct. In civil actions the plaintiff seeks damages for an injury to his reputation. But if his reputation has already been soiled, if he has acquired a bad reputation, he has little to lose, and his claim to damages is thereby diminished. It is upon this point only that the evidence is admissible. If it goes to the jury, in a case where truth is pleaded in justification, the jury ought to be instructed, that on the issue joined upon the facts pleaded, such evidence should have no weight ; and a jury would violate their solemn duty, should they apply such evidence to the issue. In a criminal prosecution, therefore, where no damage is claimed, the principle of the rule does not apply, and if the proposed evidence were admitted, it would have no tendency but to mislead the jury.

*Exceptions overruled and judgment on the verdict*