IRENE L. BOESCH, PLAINTIFF, v. EMILE F. KICK, DEFENDANT.

Argued November 1, 1921—Decided April 4, 1922.

1. When one has restrained a member of society of his liberty, who may be deranged in his mind, he must show, in order to justify such 'conduct, when charged therewith as a wrongful act, not only that the person was insane at the time, but also that to permit him to go at large imperiled his own safety or the safety of the public. The defendant assumes the burden of showing that fact and the imminent necessity of the restraint. He must show that the danger from the plaintiff's being at large was not merely possible but probable.

2. In actions against several for a tort, though a conspiracy be charged, one of the defendants may be found guilty and the others not guilty.

3. To set aside a verdict against the weight of evidence, it must be so clear as to give rise to an inference that the verdict was the result of mistake, passion or prejudice.

4. Malice in a legal sense is any unlawful act done willfully and purposely to the injury of another. It is not necessary there should be ill-will. Malice may be implied whenever there is a deliberate intention to do a grievous wrong without legal justification or excuse.

5. The evidence examined in this case. It shows the verdict of $8,500 is supported by the weight of the evidence. It is in harmony with the theory of the law upon which the case was submitted to the jury. It is not excessive.

On rule to show cause.

Before Justices SWAYZE, BLACK and KATZENBACH.

For the plaintiff, *Samuel Press* and *Howard MacSherry*.

For the defendant, *Heine, Bostwick & Bradner*.

The opinion of the court was delivered by

BLACK, J. In this case there were three defendants, including two physicians. The trial resulted in a verdict in favor of the two physicians and against the defendant, Kick,

for $8,500. The defendant, Kick, obtained a rule to show cause, reserving all exceptions taken at the trial. The reasons upon which the defendant rests the motion for a new trial are, the verdict is not sustained by the weight of the evidence and the verdict is excessive. Hence the problems presented to the court for solution. The charges laid against the defendant in the complaint are, first, a conspiracy to incarcerate and confine the plaintiff in an institution for the insane, and second, a malicious prosecution resulting in false imprisonment by a malicious charge of insanity. The answer is a denial, with a defence that as the plaintiff had been adjudged insane she could not maintain the action except by guardian or next friend. The adjudication against the plaintiff operates as *res adjudicata* with respect to the allegations contained in the complaint.

The judge at the trial charged the jury, first, the burden of proof was upon the plaintiff to show by the greater weight of the evidence that the charge was groundless—that is, there was no probable cause warranting the acts of the defendants; second, the principle upon which the action is founded is that a tort or wrong was committed. The action can be sustained against one of the defendants as well as against more than one, and the gist of the action is the damage done and not the conspiracy; third, when a person is so far disordered in mind as to be dangerous, or may become dangerous to himself or to others, he may be restrained of his liberty.

Our inquiry is not primarily with the legal questions raised in the record. They are all reserved in the rule. We are to inquire and ascertain whether the verdict, as found by the jury, is sustained by the weight of the evidence on the legal theory upon which the case was put to the jury. The record in this case is voluminous, containing something over seven hundred pages The trial consumed eight days. The questions involved are far-reaching in their application and of much concern to the parties interested. The plaintiff called sixteen witnesses, the defendant twelve. The plaintiff had six exhibits, the defendant thirteen. It would serve no useful

purpose and be of no profit to the parties to review the evidence in detail. It is not necessary for the purpose in hand. It may, however, be desirable to point out some of the undisputed evidence. There is no controversy over the fact that the plaintiff was temporarily committed on December 26th, 1917, to the Essex county hospital for the insane at Overbrook, by an order of the judge of the Juvenile Court of Essex county under the act *Pamph. L.* 1916, *p.* 182. The order was made upon the certificates signed by the two physicians, who were parties defendant to the action. The defendant arranged the meeting at which the plaintiff was examined by the physicians. She was led to believe by the defendant proceedings would be taken to have her husband committed to an asylum. The defendant, on the pretence that they were going to the asylum to make arrangements for the commitment of her husband, induced the plaintiff to go with him in an automobile. When they reached the asylum she was left there by the defendant. Subsequently, after several days, at the request of her husband, she was permitted to leave but was not discharged. The plaintiff called several witnesses—ten or eleven —who testified to conversations with her, extending over a number of years, tending to show her mental condition which seemed to them to be normal. This testimony was competent. *State* v. *Morehouse, post p.* 285. Nowhere in the record is there any testimony or even a suggestion that to permit the plaintiff to be at liberty it would imperil her own safety or the safety of the public, or that she might become dangerous. The defendant's testimony may be searched in vain for any such suggestion as a ground for his participation. Nowhere does the defendant make denial of his participation in sending the plaintiff to the asylum. He testified as a witness and admits that he had a part in it. He gave a full account of the entire transaction. His evidence justifies the verdict found by the jury. His testimony is that he was fifty-eight years old, a manufacturing chemist. He knew the plaintiff ten years. He had seen her from 1915 to 1917, probably four or five hundred times. "She would meet me every morning at the

Central railroad station, in Newark, to talk over her troubles. She wrote me letters for three years, about four a week. She talked to me about Boesch, some of the stockholders, about her business, her life, her marriage, about her children and everything that it is possible for a woman to bring up. I never had any business relations with her, none whatsoever. All the money I gave to Mrs. Boesch was for loans. She asked me for loans and Boesch would tell me to give them to her. No part of Mrs. Boesch's money was invested in any part of my business. I am responsible for Mr. Boesch's position with the Amalgamated Dye Stuffs Chemical Company. I was the best friend Mr. Boesch had in Newark. She regarded me as the best friend she had in Newark; she always regarded me as a very good friend of hers, because she would always come to me when she wanted anything, when she got into difficulties financially. I always treated the woman as a woman of unsound mind from the beginning, and her husband told me that; I treated her as I would any lady that was sick. One of her delusions was that Mr. Boesch was crazy and should be put in an asylum; that subject came up very frequently. Boesch said it's time to put her away. Boesch told me, now, if she is so insistent upon my going to the asylum, he said, we'll put her away. He said it will cost a lot of money. I had to do with it simply as a friend of his. Then I called up my family physician; he said you had better get the best authorities on mental incapacity. I then called up Dr. Beling and Dr. Hicks. I went to Dr. Beling. I told Dr. Beling I had a lady that was insane and she wanted to put her husband in an insane asylum. Sunday, at half-past nine, at the New Jersey Central depot, I met Mr. and Mrs. Boesch; we got on the trolley car and went down to Dr. Beling's. I paid the doctor's fees. Mr. and Mrs. Boesch went away together, so I went down to Dr. Beling's office on Tuesday and got the papers and met Boesch at twelve o'clock and gave him the papers. To make a long story short, I said I'll see what I can do. He handed me the papers. I was to take them to Overbrook.

"Mr. Bostwick and I met Mrs. Boesch, and, under the guise of making arrangements to place Mr. Boesch in the asylum, she went with us. So I put her in the car and saw that she was well taken care of. When we got to Overbrook we stepped into the office; she sat in a chair there near a great big log fire; it was very cozy. I went outside, saw some officers of the institution and handed them the commitment papers That was the end of the trip. I went out and left Mrs. Boesch there. I have no animosity against Mrs. Boesch; I think well of her. I think her a fine lady with unsound mind."

This testimony, tested by the legal rule under which one has the right to restrain another of his liberty on the ground of insanity, justifies the·verdict. We think it is sustained by the weight of the evidence and in harmony with the theory of the law upon which the case was submitted to the jury.

The Supreme Court of Iowa has recently examined this subject, and in a careful opinion said in the case of *Maxwell* v. *Maxwell*, 189 *Iowa* 7; 177 *N. W. Rep.* 541: "The right of one to arrest and restrain another of his liberty on the ground of insanity is dependent upon the existence of the fact upon which the right is predicated. A citizen has not the right to arrest any member of society, who may be deranged in his mind, and, therefore, in order to justify his act, when charged with wrongful arrest, he must show, not only that the person was insane at the time, but also that to permit him to go at large imperiled his own safety or the safety of the public. It is not sufficient to show that he was lacking in mental capacity, or had hallucinations, but the person causing the arrest must go further, and show that to permit him to go unrestrained imperiled his own safety or the safety of the public. It is not sufficient to show in cases of this kind that he had probable grounds for suspecting that the person arrested was insane or probable reason for believing that his being at large would imperil the safety of the public. He must justify it by proving the fact upon which his right to restrain rested." He assumes the burden of showing that fact and the

imminent necessity of the restraint. The principle there stated, in that case, is rested upon a well-considered case by the Supreme Court of Michigan (*Van Deusen* v. *Newcomer, 42 Mich.* 90), so the subject is considered in the case of *Colby* v. *Jackson,* 12 *N. H.* 526.

The defendant must show that danger from the plaintiff's being at large was not merely possible but probable.

Nowhere in the evidence can we find any legal justification for the defendant's active participation in this affair. He says, "He had to do with it simply as a friend of his," *i. e.,* Boesch. Nowhere in the record is it denied that he did not participate in and was not an active factor in placing Mrs. Boesch in the Essex county hospital for the insane. By deception and trickery he brought about the plaintiff's examination by the physicians; by the same methods he got her to go with him in an automobile to the Overbrook asylum. It is always risky business to intermeddle in the affairs of husband and wife; one does so always at his peril. This case is a conspicuous illustration of that fact.

The ground upon which the court will set aside a verdict as against the weight of evidence has been stated by this court many times; suffice it to say, it must be so clear as to give rise to an inference that the verdict was the result of mistake, passion or prejudice. It will not be set aside, although in the opinion of the court the jury might upon the evidence have found otherwise (*Queen* v. *Jennings,* 93 *N. J. L.* 353), or because the court, if serving as a jury, would have found differently. *Dickerson* v. *Payne,* 53 *Atl. Rep.* 699.

We think the verdict of $8,500 is not excessive.

In actions against several for a tort, though a conspiracy be charged, one of the defendants may be found guilty and the other not guilty. The principle is that the action is founded on the tort, and can therefore be sustained against one as well as against several for the damages chargeable to the wrongful act. *Van Horn* v. *Van Horn,* 52 *N. J. L.* 284; 56 *Id.* 318.

So it was permissible for the jury to find malice, which in a legal sense is any unlawful act done willfully and purposely to the injury of another. It is not necessary that the perpetrator of such act should be influenced by ill-will towards the individual. *Commonwealth* v. *Snelling*, 32 *Mass.* 337, 340; *Benton* v. *State*, 59 *N. J. L.* 551.

Malice may be actually implied whenever there is a deliberate intention to do a grievous wrong without legal justification or excuse. *Williams* v. *Williams*, 20 *Colo.* 51; *Wendelken* v. *Stone*, 88 *N. J. L.* 267. We cannot substitute our judgment for that of the jury in measuring the damages that should be given to the plaintiff for the wrong done her in this case.

So we conclude the rule to show cause should be discharged.