24 N.J. Super. 407 (1953)
94 A.2d 501
IN THE MATTER OF MARIE HEUKELEKIAN, COMMITTED AND CONFINED IN THE NEW JERSEY STATE HOSPITAL AT MARLBORO AS AN INSANE PATIENT.
Superior Court of New Jersey, Appellate Division.
Argued December 15, 1952.
Decided January 30, 1953.
*408 Before Judges McGEEHAN, BIGELOW and JAYNE.
Mr. Ira D. Dorian argued the cause for appellant Marie Heukelekian.
The opinion of the court was delivered by McGEEHAN, S.J.A.D.
In proceedings pursuant to R.S. 30:4-27 et seq., the judge of the Middlesex County Court, after a final hearing held on July 1, 1952, determined that Marie Heukelekian is insane and that her commitment to the State Hospital at Marlboro should be continued. Marie Heukelekian appeals.
On May 23, 1952 the appellant's husband made application to the judge of the Middlesex County Court, under R.S. 30:4-37, for the admission of appellant to the State Hospital at Marlboro (hereinafter referred to as Marlboro) and her commitment and confinement therein as an insane person. On the same day the judge signed the order of temporary commitment. On July 1, 1952 the final hearing was held, without a jury, before the county judge who issued the temporary commitment. The trial judge found:
*409 "In my opinion the evidence by a preponderance of the proof established the insanity of the subject. From the testimony of the doctor, Mrs. Marie Heukelekian was more than a nuisance, and the testimony very definitely indicated that she was in such a mental condition that required her continued commitment. This was not contradicted by any physician produced by the subject."
R.S. 30:4-44 provides that the judicial officer shall inquire as to the sanity of the patient; if found insane, the commitment is continued, but if found sane, the judicial officer shall order his discharge forthwith. Thus the inquiry under this statute is the same as that made on return of a writ of habeas corpus issued under present N.J.S. 2A:67-13 (formerly R.S. 2:82-50) and the decisions under the last mentioned statute will aid in the determination of the question before us.
To support a finding of insanity warranting the continued confinement, within the meaning of the statute, it is not enough to show that the person is lacking in mental capacity or has hallucinations; there must be a showing that if the person is liberated she will probably imperil her own safety or the safety or property of others. Cf. In re Perry, 137 N.J. Eq. 161 (Ch. 1945); In re R.R., 140 N.J. Eq. 371 (Ch. 1947); Boesch v. Kick, 97 N.J.L. 92 (Sup. Ct. 1922). Peculiarities in conduct or personality which fall short of actual insanity are insufficient to justify the deprivation of personal liberty, which is involved in such a commitment. It is generally recognized that the test of insanity or unsoundness of mind, warranting commitment to a mental hospital or asylum, is whether such insanity is of such a degree or character that if the person so afflicted were allowed to be at large he would, by reason of such mental condition, be a danger to life, person or property, or a menace to the public. 28 Am. Jur., Insane and Other Incompetent Persons, § 26; 158 A.L.R. 1220.
Persons are considered sane, in legal proceedings, until the contrary is shown, and a reasonable doubt of a person's insanity should be resolved in her favor. Allgor v. *410 New Jersey State Hospital, 80 N.J. Eq. 386 (Ch. 1912); In re Perry, above.
It is the duty of the applicant to bring the matter before the court on final hearing. R.S. 30:4-42. The only testimony submitted to establish the insanity of appellant was that of the assistant medical director of Marlboro. This witness testified that he diagnosed her illness as "dementia praecox, paranoid." In support of this diagnosis he stated that she rambled at times; "at times she is evasive, but there was no definite evidence of it at this time"; "she has a poetical mysticism" and "it was extremely difficult for her to follow through to any goal idea"; that on June 10 last she was disoriented for both time and place, but she is now oriented as to both; and that she is entirely wrapped up in her own world, which is really one of fantasy. In answer to the court's question as to whether she should be discharged from the hospital, he answered, "In my opinion she should continue her course of treatment of insulin shock therapy." He also stated she had received nine treatments of insulin shock therapy, preceded by 15 electro-shock treatments; and that she got very little, if any, benefit from her electro-shock treatments.
On cross-examination the doctor testified that she has no hallucinations; if she has any delusions, they cannot be demonstrated at the present time; she is a highly intelligent person, and her general physical condition is good. When asked if she would be dangerous to the public if she were released, he answered, "She has never shown, and there is no history of any homicidal or suicidal tendencies. However, she has been of nuisance value."
The appellant, testifying in her own behalf, stated that her husband (the applicant for her commitment) deserted her over two years before; and that he sought a divorce from her, but she would not agree to it, although he made financial offers. She testified at some length in answer to questions of her attorney and of the court. When read in the printed record, her testimony, in general, appears to be that of a *411 rational person. When two lapses of memory were called to her attention by the court, she explained that she was under shock treatment and this treatment "blasts out memory." The trial judge did not rely on anything in the demeanor of the appellant at the hearing or in her testimony as a support for his finding of insanity. Cf. In re R.R., above.
We conclude that, although the appellant's mental capacity may be lacking in some respects and she may seem at times to live in a world of fantasy, the proofs fall far short of a showing that she is so mentally impaired that her continued confinement is necessary in order to avoid probable danger to her own safety or the safety and property of others.
Judgment reversed and the cause remanded for the entry of judgment ordering her discharge from confinement forthwith.
BIGELOW, J.A.D. (dissenting).
We are handicapped by the circumstance that the appeal is unopposed. And I have not the time to make an adequate independent study of the case.
Until half a century ago, an insane asylum was no more than an institution in which the insane were housed and were prevented from injuring other persons or themselves. But nowadays an important function of a hospital like Marlboro is medical treatment and the attempt to cure those patients whose condition is not incurable. An insane person, like a child, is apt to be incapable of making a reasonable choice, either to undergo the treatment offered by the hospital, or to reject it. The State makes the decision for the child. 43 C.J.S., Infants, § 11, p. 64; In re Vasko, 238 App. Div. 128, 263 N.Y.S. 552 (App. Div. 1933). Can not the State also make the decision for an insane person? To warrant commitment to the Marlboro Hospital, I suggest that it was enough to show that the appellant, by reason of mental disease, lacked capacity to decide for herself, and that treatment in the hospital would probably be beneficial to her.
*412 A case of this character is peculiarly one in which the court must lean heavily on expert testimony. The expert witness in the present case was the assistant medical director at Marlboro, one of our large state hospitals, an institution of high reputation. We may assume that the doctor has made an intensive study of insanity, has had great experience in his chosen field, and has an excellent professional rating. There is no reason to suspect that he has any interest in the case except the best interest of the appellant. The county judge rightly accepted his opinion as a basis for the court's decision, and we should do the like.
I am not sure of the part that "reasonable doubt" should play. This is not a proceeding hostile to appellant but is one prosecuted principally in her interest, in which the court is seeking light how best to perform the duties of parens patriae. Probably the first inquiry  whether the subject of the proceeding is insane in a medical sense  should be decided in the negative, if there is substantial doubt. Certainly the secondary questions, whether commitment is necessary for the safety of the patient or the public, and whether the patient should have medical treatment, do not call for answers beyond a reasonable doubt.
At the argument, counsel stated that since the hearing in the County Court, the medical treatment had been completed and the hospital staff recommended paroling the patient if someone would take care of her. But no one was willing to do so, and the staff were not ready to discharge her unconditionally. Of course, these facts do not appear in the record before us; but if they were made to appear, a new problem and a new line of inquiry would be presented. Has the patient sufficient funds to maintain herself? Has she a place of residence available? And has she the mental ability to care for herself if she were living alone? In short, there would have to be the kind of inquiry that a friend or relative, zealous for the welfare of appellant, would make before reaching a decision.
I believe the judgment should be affirmed.