EDWARD WESTON ET AL., PLAINTIFFS IN ERROR, v. PENNSYLVANIA RAILROAD COMPANY, DEFENDANT IN ERROR.

Submitted July 9, 1906—Decided March 4, 1907.

1. If, under the evidence, reasonable minds may differ as to whether the defendant was negligent or the plaintiff guilty of contributory negligence, the court cannot take the case from the jury and direct a verdict.

2. How a prudent man would act in the face of concurrent and distracting dangers must, in the nature of things, be a question of fact to be passed upon by the jury, and not a question of law upon which the court may order a nonsuit or direct a verdict.

On error to the Supreme Court.

For the plaintiffs in error, *Edmund Wilson.*

For the defendant in error, *Alan H. Strong.*

The opinion of the court was delivered by

FORT, J. This was an action in tort for injuries resulting in an accident at a crossing of the defendant company at Englishtown in this state.

At the conclusion of the whole case there was a motion for the direction of a verdict for the defendant, which was granted by the learned trial justice on the ground that the plaintiff, Mrs. Weston, was guilty of contributory negligence.

We are unable to agree with the view taken by the learned trial justice. We think the case was for the jury. The learned justice seems to have overlooked the fact that in cases where there is divergence in the testimony relative to the circumstances under which the accident occurred, the court may not determine the issue by considering the probabilities of the case and the weight or credibility of the evidence. If there be evidence upon which reasonable minds may differ as to whether the defendant was negligent or the plaintiff guilty of contributory negligence, the case cannot be taken from the jury. *McLean* v. *Erie Railroad Co.,* 40 *Vroom* 57; *affirmed,* 41 *Id.* 337.

The proof in this case made it clear that at the crossing in question the railway right of way ran through a cut from eight to twenty feet in depth in the direction from whence the train approached the crossing at which the plaintiff, Mrs. Weston, was hit. It also appeared that upon the right of way of the defendant, on the bank along the cut, there has been allowed to grow trees and shrubbery.

At the place of the accident the highway met the railroad tracks at an angle of about sixty-two degrees, the smaller angle being in the direction from which the train came that hit Mrs. Weston.

There was no flagman, gate or bell at the crossing to warn a traveler of an approaching train.

All the evidence goes to show that a view of the track can

only be obtained when a traveler in a carriage is within less than thirty-five feet of the tracks.

There was evidence by three witnesses, at least, that no bell was rung or whistle blown as Mrs. Weston approached the track on this day. She was driving a gentle horse, at a slow pace, and she testifies that she stopped the horse three times at as many different points as she came up the road to the track, and on each occasion looked and listened and neither saw nor heard anything. At the time she made the last stop she was less than thirty feet from the track and, not seeing or hearing anything, she dropped down upon her knees in the bottom of the wagon that she might the better see any oncoming train, and started the horse to cross over the track when, suddenly, and without warning, the train came upon her.

In her statement of these facts she is fully corroborated by George West, who was in the adjoining field, and by the defendant's witness, Charles Sutton, who was standing on the other side of the track. Both of these witnesses were in full view of the whole occurrence. These witnesses also say that the whistle only blew just as the train was coming upon the plaintiff and her horse and carriage. This naturally frightened the horse, and in the excitement it rushed forward and around to the left to turn into a field by the side of the road.

Neither the horse nor the wagon got upon the track, but the horse became unmanageable and, in turning, the hind wheel of the wagon was hit by the engine or some part of the train, and the wagon demolished and Mrs. Weston thrown. The horse was uninjured.

When the plaintiff rested the court had refused to nonsuit, and rightly, as we think, but when the case was closed directed the verdict for the defendant.

If a nonsuit was not proper, as it was not, we are at a loss to see on what theory the direction for the defendant can be sustained.

Whether the plaintiff, under the proof as here reviewed, did what a reasonably prudent person would do under the circumstances surrounding her after the train was upon her, as well

as whether she had exercised reasonable care in approaching the track and in looking and listening, were all questions to be passed upon by the jury.

In the case of Connelly v. Railroad, Mr. Justice Garrison says: "How a prudent man would act in the face of concurrent and distracting dangers must, in the nature of things, be a question of fact  to be passed upon by the jury and not a question of law upon which the court may order a nonsuit or direct a verdict." *Connelly* v. *Trenton Passenger Railroad Co., 27 Vroom 704; Davis* v. *Central Railroad Co., 38 Id. 660; Tuttle* v. *Atlantic City Railroad Co., 37 Id. 327; Goodenough* v. *Pennsylvania Railroad Co., 26 Id. 577; Hires* v. *Atlantic City Railroad Co., 37 Id. 30; Ellis* v. *Erie Railroad Co., Id. 451; McLean* v. *Erie Railroad Co., 40 Id. 57; affirmed, 41 Id. 337; Schramm* v. *Parker, 43 Id. 243.*

The judgment of the Supreme Court is reversed and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, FORT, GARRETSON, PITNEY, SWAYZE, REED, TRENCHARD, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL, J.J.   15.