WALTER F. DOBBS, DEFENDANT IN ERROR, v. WEST JERSEY AND SEASHORE RAILROAD COMPANY, PLAINTIFF IN ERROR.

Submitted November 24, 1909—Decided February 28, 1910.

Plaintiff, driving a horse and buggy, was injured by being struck by defendant's railroad train at a grade crossing. It appeared that the view down the track was substantially interfered with by a line of telegraph poles maintained by defendant as part of its equipment for electrical propulsion of its trains. This line of poles stood twenty-two feet from the middle track on which the accident occurred, and probably not over ten feet from the nearest rail of the first track. *Held*, that the question of contributory negligence was for the jury.

On error to the Supreme Court, whose opinion is reported *ante p.* 101.

For the plaintiff in error, *Gaskill & Gaskill.*

For the defendant in error, *Matthew Jefferson* and *John W. Wescott.*

The opinion of the court was delivered by

PARKER, J.   The present case grows out of an accident which took place on April 5th, 1908, at Gloucester, the circumstances of which are described in the opinion of Mr. Justice Reed for the Supreme Court, reported *ante p.* 101, and need not be again detailed.   The plaintiff in that case was the owner of the horse and buggy that were struck by the defendant's train; the present plaintiff was the driver.   The case at bar was brought in the Supreme Court, tried at the Camden Circuit, a verdict rendered and judgment entered for plaintiff for damages on account of personal injuries sustained by him in the collision, and is before us on writ of error.

Of the assignments of error in the present case, those that are relied on are—*first,* that the court erred in denying the motion to nonsuit; this is pressed solely on the ground of contributory negligence; *second,* that the court erred in refusing to direct a verdict for the defendant on the same ground; *third,* that the court erred in refusing to charge in the language of the fourth request submitted by the defendant.

We have little to add to the views expressed by Justice Reed in the Supreme Court case so far as respects the question of contributory negligence.   Some further observations with regard to the line of telegraph or telephone poles may not be out of place.   It does not appear in the reported opinion, but is the fact, that the defendant's railroad was operated by electricity and that the line of poles was maintained by defendant to carry the current used by it in such operation.   This line of poles is stated in the testimony to be

twenty-two feet from the nearest rail of the northbound track, which was the middle track. It does not appear in the testimony, so far as we can discover, how far this line of poles was from the nearest rail of the nearest track (which presumably was the southbound track). A map drawn to scale was introduced in evidence but not submitted at the argument.

Counsel for plaintiff in error base their argument mainly on the distance of the line of poles from the middle track, and claim this distance of twenty-two feet was quite sufficient, assuming that plaintiff's vision was obstructed by the line of poles until he had passed them, to enable him to drive his horse past the line of poles and far enough on the other side to afford plaintiff a clear view down the track, and that therefore plaintiff was guilty of contributory negligence as a court question. The difficulty with this argument is that it ignores the presence of the nearest or southbound track as a factor in the situation. Assuming, as a matter of common knowledge, that the track was four feet eight and one-half inches wide and separated from the northbound track by a passing distance of, say, seven or eight feet, this would leave a distance of only about nine or ten feet from the line of poles to the nearest rail. It was testified in the case that from the horse's head to the seat of the wagon was a distance of ten to twelve feet, and, of course, it follows that to enable the plaintiff to pass beyond the line of telegraph poles sufficiently to see down the railroad track without any obstruction, his horse would at least be entering upon the southbound track at the moment when the driver, sitting on the seat of the buggy, cleared the line of poles.

From our examination of the photographs and the evidence we agree with the Supreme Court that the poles offered a substantial obstruction to the view. Even in the picture they appear to be somewhat confusing, and it may well be inferred that on the ground and from the seat of a moving buggy this condition would be somewhat intensified.

From the testimony as to the respective speeds of the horse and of the train, a little calculation will show that the infer-

ence is clearly permissible, that as the plaintiff approached the line of poles, and until he reached a point where he could not stop his horse in safety and from which he could not retreat, the train was still far enough away to be quite an inconspicuous object and largely concealed by the obstruction to the vision that was created by the defendant. This would bring the question of contributory negligence within the ruling in *Pennsylvania Railroad Co.* v. *Matthews*, 7 *Vroom* 531, in which case there was a railroad cut on a curve; in *Delaware, Lackawanna and Western Railroad Co.* v. *Shelton*, 26 *Id.* 342, where there were a fence and a car standing on a side track, which, to some extent, prevented a view of the track; in *Hires* v. *Atlantic City Railroad Co.*, 37 *Id.* 30, where the view was obstructed by underbrush and trees, piles of ties and a curve, and in *Wolcott* v. *New York and Long Branch Railroad Co.*, 39 *Id.* 421, where the view was obstructed by buildings.

We think, therefore, that the question of contributory negligence, both as respects the motion to nonsuit and the motion for a direction, was clearly a proper one for submission to the jury.

The request to charge was as follows: "If the poles interfered with a view of the approaching train from the standpoint in line with the range of poles or at an angle thereto, such obstruction was easily overcome; a slight movement on the part of the observer would have accomplished it, and prudence should have dictated to the plaintiffs, if they discovered that they could not see because of the poles from any particular standpoint, to take a different standpoint for their observation."

This request is taken bodily from the opinion of the Supreme Court in *Willoughby* v. *Erie Railroad Co.*, 48 *Vroom* 149, which case was before that court on rule to show cause, and where the court was engaged in a discussion of the facts of the case rather than in laying down a general proposition of law applicable to all cases; but the request as proffered in the present case called on the court to give controlling force to a particular set of circumstances which at best furnished

matter for argument before the jury as to the plaintiff's negligence, and hence presented necessarily an occasion for the exercise of a wide discretion in the trial court. The refusal of the request was a perfectly legitimate exercise of such discretion and furnished no ground of complaint. We may add that, in our judgment, the request was not under any circumstances applicable to the present case, for, as already observed, the only way to "overcome the obstruction" in the language of the request, was to drive past the line of poles into a place of danger, either on the track or so close to it as to compel the driver to go on.

The judgment will be affirmed.

*For affirmance*—THE CHANCELLOR, GARRISON, SWAYZE, REED, PARKER, BERGEN, BOGERT, VREDENBURGH, VROOM, GRAY, CONGDON, JJ. 11.

*For reversal*—None.