JOEL DICKINSON, PLAINTIFF IN ERROR, v. ERIE RAIL-
ROAD COMPANY, DEFENDANT IN ERROR.

Argued November 29, 1910—Decided September 14, 1911.

1. Where the view of a driver of an automobile approaching a rail-
road grade crossing was obstructed by permanent obstructions so
that he could not see the train approaching on the westbound
track until the front wheels of his automobile were on the east-
bound track, and it appeared that, upon reaching the top of a hill
two hundred feet distant from the crossing, he turned off power
and proceeded by force of gravity, noiselessly, at a speed of four
miles an hour, constantly looking and listening, but hearing no
signals, and it further appeared that there were no transient
noises nor temporary obstructions to the view, he was not guilty
of contributory negligence as a matter of law in not stopping
before his view became effective.

2. Where a traveler upon a highway, without any fault on his
part, is placed in a position of imminent peril at a railroad
crossing, the law will not hold him guilty of such negligence as
to defeat his recovery if he does not select the very wisest
course, and an honest mistake of judgment in such a sudden
emergency will not of itself constitute contributory negligence,
although another course might have been better and safer; and
this rule is especially applicable where the person is placed in such
perilous position by reason of the railroad company's negligence
in failing to give proper signals. All that is required of a person
in such an emergency is that he act with ordinary care under
the circumstances, it being for the jury to determine whether
such an emergency existed and whether the traveler acted with
due care.

3. Where the evidence, when the plaintiff rests, leaves the con-
tributory negligence of the plaintiff in doubt, the determination
of the question must be submitted to the jury.

On error to the Supreme Court.

For the plaintiff in error, *Herbert Clark Gilson.*

For the defendant in error, *Cortlandt & Wayne Parker.*

The opinion of the court was delivered by

TRENCHARD, J.    This action was brought to recover dam-
ages sustained by the plaintiff in the way of injuries to his

person and the destruction of his automobile, occasioned by a collision with a locomotive engine operated by the defendant company, at a highway grade crossing at "Howells," Orange county, New York.

According to the evidence introduced by the plaintiff, no bell, whistle or other warning was given by the defendant's train, and there was no flagman, gate or electric bell at the crossing. At the trial, and here, therefore, it seems to have been properly conceded that there was thus presented at least a jury question as to the negligence of the defendant.

The trial judge nonsuited the plaintiff on the ground of his contributory negligence, and the judgment entered thereon is now here for review.

It appeared that the highway upon which the plaintiff was traveling runs north and south, and the railroad east and west. The plaintiff, who was riding in and operating an automobile, was going in a northerly direction. His wife and daughter were riding with him. As the plaintiff approached the crossing, he came to the top of a hill about two hundred feet distant from the crossing, and from that point the highway runs slightly down grade until a point twenty feet from the track is reached. There were three tracks, the first to be crossed was the eastbound; the second, the westbound, on which the train was coming; and the third was a siding. When the plaintiff reached the top of the hill, he slowed down and from that point proceeded "very slowly; about as fast as a man would walk, four or five miles an hour." The power of the automobile was turned off, and it was at "low speed which acted as a brake." According to the testimony, the automobile then made no noise. As the plaintiff approached, the view to the west was unobstructed; the view to the east, from which direction the train came, was obstructed by a high bank of earth running parallel with the highway for about five hundred feet, to a point about twenty-six feet from the tracks. A considerable part of that space was occupied by the defendant's freight shed, and by telegraph poles and other obstructions. The result was, as stated by the trial judge, in dealing with the motion to nonsuit, "it would not be until a person on the high-

way had cleared the northerly line of the freight shed that he would have a distinct view of the westbound track to the east for a sufficient distance to make his observation of much practical use. This northerly line of the freight shed is nine feet three inches south from the nearest rail." After referring to the testimony as to the length of the automobile and the position of the plaintiff therein, the trial judge concludes: "It results, I think, from the proofs, that Mr. Dickinson could first get a long, unobstructed view to the east at just about the time when his front wheels came on the south rail of the eastbound track." It was clearly open to the jury to have drawn like inferences from the testimony. The plaintiff looked both to the east and west, and listened constantly from the time the crossing could first be seen which was at the top of the hill. When the last obstruction (the freight shed) was passed, the train was suddenly seen approaching at a speed of forty or fifty miles an hour. Whereupon the plaintiff turned the steering wheel to the west and jumped from the automobile, dragging his wife with him. In jumping he injured his knee. His daughter also jumped, and the automobile continued by force of gravity over the first track and was struck by the locomotive on the westbound track. The distance between the south rails of the two tracks was thirteen feet. The plaintiff and his family all testify that they alighted upon the eastbound track.

The learned trial judge held the view that when he jumped the plaintiff was in a place of safety, and nonsuited upon the theory that he was guilty of contributory negligence in not stopping the automobile instead of jumping.

We are of opinion that the nonsuit cannot be supported upon the ground taken by the trial judge, nor upon any other ground.

The defendant first contends that the plaintiff "was bound to stop before crossing the tracks."

As a general rule, a traveler on a highway approaching a railroad crossing is bound to exercise reasonable care; that is, such care and prudence as an ordinarily prudent man would exercise under like circumstances, in looking and listening

for approaching trains before going on the crossing; and if he fails to do so, whereby he is injured, he is guilty of contributory negligence, barring a recovery, although the railroad company itself is guilty of negligence. *Passman* v. *West Jersey, &c., Railway Co.,* 39 *Vroom* 719; *Swanson* v. *New Jersey Central Railway Co.,* 34 *Id.* 605; *Pennsylvania Railroad Co.* v. *Pfuelb,* 31 *Id.* 278; *affirmed,* 32 *Id.* 287.

Such duty to look and listen before crossing requires, especially where physical conditions interfere with the free use of vision or hearing, that the traveler should exercise care to select a position from which an effective observation can be made, and to use the necessary means within his control to render the act of looking and listening reasonably effective. *Conkling* v. *Erie Railroad Co.,* 34 *Vroom* 338.

Where there are permanent obstructions to sight that would make danger invisible, and a transient noise that would make it inaudible, it is negligence to go forward at once from a place of safety to a place of possible danger, without waiting for hearing to become effective. *Central Railroad Co.* v. *Smalley,* 32 *Vroom* 277.

But the duty to stop before crossing has not been held, in this state, to arise except where there are transient noises or temporary obstructions to the view. *Wise* v. *Delaware, Lackawanna and Western Railroad Co.,* ante p. 397; *Merkle* v. *New York, Lake Erie, &c., Railway Co.,* 20 *Vroom* 473; *Central Railroad Co.* v. *Smalley,* 32 *Id.* 277, 279; *Keyley* v. *Central Railroad Co.,* 35 *Id.* 355.

We have pointed out that, in the present case, it was open to the jury to find that the view of the plaintiff to the east was obstructed so that he could not see the approaching train until the front wheels of his automobile were on the first or eastbound track. The uncontradicted testimony was that the automobile made no noise as it proceeded down grade to the crossing, and there was no evidence of other transient noises, nor of temporary obstructions to the view. Under the cases cited, it cannot be said, as a matter of law, that the plaintiff was guilty of contributory negligence in not stopping before his view became effective.

Since the plaintiff was not negligent up to the point where the train came into view, no negligence can thereafter be imputed to him as a matter of law, because, as we have pointed out, it was open to the jury to find that, when he cleared the freight shed so as to enable him to see the approaching train, the front wheels of his automobile were on the first rail of the first track, and only about thirteen feet from the westbound track. *Dobbs* v. *West Jersey and Sea Shore Railroad Co.*, 49 *Vroom* 679; *Danskin* v. *Pennsylvania Railroad Co.*, 50 *Id.* 526.

The defendant argues that the plaintiff should have stopped his automobile on the first track instead of jumping. But clearly his failure to stop and his conduct in jumping cannot be said to be negligence as a matter of law. Where a traveler, without any fault on his part, is placed in a position of imminent peril at a crossing, the law will not hold him guilty of such negligence as to defeat his recovery if he does not select the very wisest course, and an honest mistake of judgment in such a sudden emergency will not, of itself, constitute contributory negligence, although another course might have been better and safer; and this rule is especially applicable where the person is placed in such perilous position by reason of the railroad company's negligence, as in failing to give the proper signals. All that is required of a person in such an emergency is that he act with ordinary care under the circumstances, it being for the jury to determine whether such an emergency existed and whether the traveler acted with due care. *Weston* v. *Pennsylvania Railroad Co.*, 45 *Vroom* 484, and cases there cited.

In the case at bar the plaintiff was confronted by a sudden peril, without any fault upon his part, and by reason of the failure of the defendant's servants to give proper signals. It may well have been, as the plaintiff testifies, that he could not determine, in the time at his disposal, on which track the train was coming. He was required to act quickly. He might have applied the brakes, taking the chance of the train being on the first track and the risk that the brakes would fail to work. He might possibly have attempted to escape by resort

to some other means. If he had chosen any such other courses, and had been struck by the train, it might have been argued with equal weight that he should have jumped when he had the opportunity.

We are of opinion that the evidence left the contributory negligence of the plaintiff in doubt, and the determination of the question should have been submitted to the jury.

The judgment of the court below will be reversed and a *venire de novo* awarded.

*For affirmance*—THE CHIEF JUSTICE, PARKER, J.   2.

*For reversal*—THE CHANCELLOR, GARRISON, SWAYZE. TRENCHARD, BERGEN, VOORHEES, BOGERT, JJ.   7.