Joseph J. BENINCASA, as Administrator Ad Prosequendum and General Administrator of the Estate of Frank Pelletere, Deceased, Plaintiff-Appellant,

v.

Leonard SAIA, Defendant-Appellee.

No. 11899.

United States Court of Appeals Third Circuit.

Argued Oct. 4, 1956.

Decided Nov. 9, 1956.

562

Harry Chashin, Paterson, N. J. (Marcus & Levy, Paterson, N. J., on the brief), for appellant.

George W. Connell, Newark, N. J., (Shaw, Pindar, McElroy & Connell, Newark, N. J., on the brief), for appellee.

Before McLAUGHLIN, KALODNER and STALEY, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This suit arises out of an intersection automobile accident which occurred in Paterson, New Jersey, about 7:30 A.M., December 27, 1952. A taxicab, operated by appellant's decedent, Pelletere, was proceeding north on Auburn Street which at its right angle intersection with Van Houten Street is a "stop street". Appellee, Saia, in a 1948 Oldsmobile convertible was driving west on Van Houten. The cars collided somewhere within the intersection of the two streets. Pellettere died January 1, 1954. On December 17, 1954, appellant filed his complaint in the district court. Alleging diversity of citizenship and jurisdictional amount in controversy, the complaint charged that the accident was Saia's fault. Appellant as general administrator sought damages resulting from his decedent's personal injuries together with the latter's expenses and loss of earnings in connection therewith. In that first count he alleged that Pelletere had died as a result of the accident. In the second count appellant, as administrator ad prosequendum on behalf of the next of kin, sued under the New Jersey Death Act, N.J.S.A. 2A:31–1 et seq. The answer, inter alia, denied negligence on the part of the appellee and denied that Pelletere had either been injured or had died as a consequence of the collision. The case was tried on the issues indicated by the pleadings. The jury gave a verdict of five thousand dollars in favor of the plaintiff as general administrator. On the death claim there was a verdict of no cause for action. The general administrator judgment was paid and cancelled of record. From the judgment entered in the ad prosequendum count this appeal was taken.

Appellant's first point is that the determination of the negligence and contributory negligence issues by the jury in the general administrator action is not binding on the administrator ad prosequendum claim.

These were two different causes of action arising out of the same wrongful acts. In both claims plaintiff charged that Saia's negligence occasioned the collision. In the general administrator count damages were sought for personal injuries to Pelletere and for his consequent losses and expenses. As administrator ad prosequendum the plaintiff, as-

serting that Pelletere's death resulted from the accident, asked for damages on behalf of the next of kin. The same defenses were presented to both actions and included that of Pelletere's contributory negligence.

The court correctly instructed the jury as to negligence and contributory negligence. Coming to damages, the court, first with regard to plaintiff as general administrator, said:

"The plaintiff is under a burden to prove by a fair preponderance of evidence a causal connection between the injury and the accident. If you determine that the injury for which compensation is here sought was not related to the accident, there can be no compensation. There must be causal connection between the injury for which claim is here made and the accident, itself, which the plaintiff alleges resulted in the injury.

"If you determine that the plaintiff is entitled to a verdict in his favor you will award him such sum as in your judgment will fairly and justly compensate him for the injury or injuries sustained and the consequent damage which resulted therefrom."

Taking up the death claim the court charged:

"The burden is upon the plaintiff to prove likewise here, not only that the deceased Pelletere died, but that his death resulted from injuries caused in the accident. There must be proof by a fair preponderance of evidence of a causal relation between his death and the injuries sustained in the accident. If you determine from the evidence and the inferences of which the evidence is reasonably susceptible that the decedent Pelletere died from causes not related to the accident, the defendant is not answerable in damages.

"Now, it becomes important here because I foresee a situation in which you might—I am not suggesting that you shall, I am not intending to imply that I entertain any opinion about it—you may come to the conclusion that the deceased suffered some injury from the accident for which he is entitled to compensation, and if all the other elements of proof have been met—and I don't want to go through them again—then he would be entitled to a verdict on that claim alone. You may determine, in view of the posture of the testimony and the conflict of the medical testimony of the doctors, that the death, ultimate death of Pelletere had no relation to the injuries sustained in the accident. In other words, you then have to return a verdict for the defendant."

Early in the charge the judge had advised the jury that two separate claims were involved and that a verdict had to be returned on each. He repeated this at the end of his instructions and for a guide gave the jury a sheet of paper with the caption of the suit appearing on it. The verdict was returned through the foreman. The transcript of this reveals the jury's complete understanding of and compliance with the court's instructions. It reads:

"The Clerk: Ladies and gentlement of the jury, have you agreed upon your verdict?

"The Foreman: Yes, we have agreed upon a verdict and I as the Foreman shall speak for the jury.

"The Clerk: Mr. Foreman, how say you?

"The Foreman: I say that we find for the plaintiff, Joseph Benincasa, general administrator, that there is just cause for the claim.

"The Court: The amount of the damage is how much?

"The Foreman: The claim for personal injury, your Honor, we don't find the last portion, the claim for death.

"The Court: What do you find on the first? What is the amount of the damage?

"The Foreman: $5,000, your Honor.

"The Court: $5,000. And on the death claim no cause for action?

"The Foreman: No cause for action, your Honor.

"The Court: All right.

"The Clerk: Ladies and gentlemen of the jury, harken to your verdict as the Court shall order it recorded. You say you find in favor of the plaintiff on the first claim and assess the damages in the sum of $5,000, and so say you all.

"The Jurors: So say we all.

"The Clerk: And on the second count you find for the defendant, and so say you all.

"The Court: No cause for action, so say you all.

"The Jurors: So say we all."

■ This is a diversity suit and New Jersey law controls. Following the general principle, that state, in the sort of situation confronting us, holds "In order to support an action there must be not only the negligent act, but a consequential injury which is the gravamen of the charge * * *." Ochs v. Public Service R. Co., E. & A. 1911, 81 N.J.L. 661, 662, 80 A. 495, 496, 36 L.R.A.,N.S., 240. And see Murphy v. Terzoko, 1951, 14 N.J.Super. 254, 261, 82 A.2d 1.

■ There were no exceptions to the above quoted portions of the charge nor were there any sound reasons for complaining of the law as stated by the court which was on all fours with the New Jersey doctrine. So what we have here is a jury accurately advised as to the law of the case and alerted to the necessity of passing separately on each claim with respect to its damage features. Following that, verdicts were returned. By those verdicts the defendant necessarily was held guilty of causing the accident and the plaintiff innocent of contributory negligence. Just cause was found for the injuries' action and five thousand dollars was the amount of the award on that count. No cause for action was found on the death claim. The reason for this, in accordance with the explicit instructions of the court, had to be that the jury, after considering the evidence, found no causal connection between the collision and Pelletere's death. There is no contradiction between the jury verdicts on the two counts of the complaint. They clearly express the jury's decision reached under the guidance of the court's instructions.

■ Appellant next asserts that the evidence compelled a finding of causal connection between the accident and Pelletere's death. He urges that his motion for judgment included this contention. Assuming that it does, the evidence demonstrates that denial of the motion was mandatory. Dr. Sporer, licensed to practice medicine in New Jersey since 1946 and who has specialized in urology from that time, testifying on behalf of the plaintiff did say that "I think by aggravating the condition of the right kidney indirectly it led to the ultimate death by accelerating [it]." Dr. Levine, practicing medicine since 1917 and attending urologist at the Paterson General Hospital since 1935, was a defense witness. In his opinion the inflamed condition of the right kidney in February, 1953 had no causal connection with the collision and there was no such connection between the collision and the November, 1954 uremia of the left kidney which resulted in the death of plaintiff's intestate. In the light of the substantial evidence given by Dr. Levine directly opposed to plaintiff's theory of the death, the trial judge had no recourse but to leave the issue to the jury which he did in the concise language above quoted. The verdict of that tribunal rests upon testimony competent to sustain the inference implied in that finding that the jury concluded that Pelletere's death was not causally connected with the accident and is conclusive. Hager v. Weber, 1951, 7 N.J. 201, 210, 81 A.2d 155.

Because the question of negligence was resolved by the jury in favor of the plaintiff any problem arising from the police officer Johnson's challenged testimony is academic.[1] Even if it were not, the compelling inference is that Saia's statement was given in the presence of the deceased under the circumstances above outlined and within close to ten minutes of the accident. From the facts the trial court may well have considered it part of the res gestae. Further, Saia, who had been called as a witness in plaintiff-appellant's case, was asked on direct examination, "Did you ever state to anyone that Mr. Pelletere had not come to a stop at the Stop sign?" He answered, "I don't remember." In the situation the Johnson evidence of what Saia said was admissible without reference to the truth of the matter to show that he had actually made the sort of statement regarding which he had been interrogated. And the Hearsay Rule had no application. Wigmore on Evidence, 3rd Ed. § 1766.

Appellant's argument that his request to charge, amounting to a direction of verdict on the negligence phase of the suit, should have been granted is also disposed of by the verdict in his favor on the question of fault. However, it might be well to state that the record reveals sharply conflicting testimony as to who was to blame for the accident. The resolving of that issue was clearly for the jury.

The judgment of the district court will be affirmed.

[1]. The radio policeman, Johnson, with his partner, arrived at the scene of the accident about ten minutes after it had occurred. He talked with both drivers. He was not asked if this was in the presence of each other and he did not specifically so state. However, on cross-examination by plaintiff's attorney he did outline his practice on such occasions saying, *"We get both drivers together, where one can hear the other one,* we ask, whoever is No. 1, what happened, he explains, whatever he says we write down; we ask No. 2 what happened, exactly what he says we write down." (Emphasis supplied). On direct examination, without objection, the witness said that Pellettere told him " * * * he slowed down at the intersection but No. 2 (Saia) came down Van Houten St. and hit him." The officer testified that Pelletere did not say anything to him about stopping at the Van Houten intersection.

Plaintiff objected to the officer giving Saia's version of the collision on the ground it was hearsay. The court permitted the testimony. The officer stated, "Mr. Saia, which is No. 2 said that No. 1, Mr. Pelletere, came through the Stop street about thirty miles an hour and hit him."