**Lillie BAILEY, Plaintiff-Appellant,**

v.

**Naomi E. BRANIN, Administratrix of the Estate of Wilbur H. Branin, Deceased.**

**No. 13029.**

United States Court of Appeals
Third Circuit.

Argued Feb. 15, 1960.
Decided June 7, 1960.

Harry Chashin, Paterson, N. J. (Marcus & Levy, Paterson, N. J., on the brief), for plaintiff-appellant.

Jerome S. Lieb, Newark, N. J. (Harkavy & Lieb, Abraham I. Harkavy, Newark, N. J., on the brief), for defendant-appellee.

Before BIGGS, Chief Judge, and KALODNER and HASTIE, Circuit Judges.

KALODNER, Circuit Judge.

In this diversity action,[1] arising out of the collision of two automobiles, the jury

---

1. Diversity of citizenship is based on the fact that the plaintiff is a citizen and resident of New York and the defendant is a citizen and resident of New Jersey.

returned a verdict of "no cause of action" upon which judgment was entered in favor of the defendant. This appeal by the plaintiff from the judgment suffered by her below and the denial of her motion for a new trial, asserts prejudicial errors by the trial judge in the conduct of the trial and his charge to the jury.

The testimony adduced at the trial may be summarized as follows:

On December 13, 1956, at about 1 p. m., plaintiff, Lillie Bailey, was a passenger in an automobile, owned and operated by her husband, which at the time was proceeding in a northerly direction in the extreme right lane of U. S. Route 130, in Pensauken Township, New Jersey. Wilbur H. Branin, now deceased,[2] was driving his car in the same lane following the Bailey car. At a point near the Airport Circle, outside of Camden, New Jersey, the front of the Branin car collided with the rear of the Bailey automobile. The roadway was wet at the time.

U. S. Route 130 is a concrete highway. At the place where the collision took place it has four northerly lanes separated by a cement divider from southbound lanes. Of the four northerly lanes, the two to the left carry traffic bound for Newark, New Jersey and New York City, and the two to the right go over a ramp which takes traffic on a long curve leading to a highway proceeding westwardly to Camden, New Jersey and Philadelphia, Pennsylvania. The accident occurred at the approach to the entrance to the ramp.

Bailey testified that while he was driving his car at a speed of about 25 or 30 miles an hour, bound for Camden, he was struck by the Branin car. A plaintiff witness, Joseph F. Silver, a Pensauken Township police officer, who arrived at the scene "within a matter of minutes" after the accident, having been summoned by Bailey and Branin, testified that in his interrogation of the two drivers, Branin told him that when he observed Bailey's car "slowing or stopping that he attempted to stop, and due to the road being wet, he could not stop quick enough without hitting them." On cross-examination Silver testified Bailey told him that "he realized that he was in the wrong lane to go to New York" and that while "he was stopping" he was hit by the Branin car. Bailey categorically denied having made the statements attributed to him by Silver.

■ The admission of Silver's testimony as to Bailey's statements is one of the points raised by the plaintiff on this appeal. She contends that it is barred by the "hearsay rule" and cannot be regarded as part of the res gestae.

We do not subscribe to plaintiff's contention. Officer Silver arrived at the scene of the accident "within a matter of minutes" and, as we said in Benincasa v. Saia, 3 Cir., 1956, 238 F.2d 561, at page 565:

> "From the facts the trial court may well have considered it [a statement made by the defendant driver to a police officer some ten minutes after the accident] part of the res gestae."

It is indeed impossible to reconcile plaintiff's adducing Silver's testimony as to what Branin had said to him and her insistence that the trial judge erred in permitting Silver to testify as to Bailey's statement at the same time.

A second point presented relates to the following instruction to the jury by the trial judge in his charge:[3]

> "Negligence cannot be imputed because of the failure to perform a duty so suddenly and unexpectedly arising that there is not opportunity to apprehend the situation and act accordingly."

Plaintiff's counsel filed exception to this instruction at the close of the charge,

---

2. Wilbur H. Branin was the original defendant in the action. He died during its pendency and Naomi E. Branin, Administratrix of his estate was substituted as defendant by an order of the District Court prior to trial.

3. The instruction was in the language of Point 8 of the defendant's requests for charge.

on the ground that it "failed to indicate to the jury that the emergency doctrine could only be applicable in the event that there was no negligence of the defendant which contributed to its having arisen."

■ Jurisdiction is based on diversity and the law of New Jersey, of course, governs. The sudden emergency doctrine was first applied by the Court of Errors and Appeals of New Jersey to an automobile accident case in Barry v. Borden Farm Products Co., Err. & App.1924, 100 N.J.L. 106, 125 A. 37. There the court said (100 N.J.L. at page 109, 125 A. at page 38):

> " * * * where the driver of an automobile upon a highway, *without any fault on his part,* is placed in a position of imminent peril by another vehicle, the law will not hold him guilty of such negligence as to defeat his recovery if he does not select the very wisest course, and an honest mistake of judgment in such a sudden emergency will not of itself constitute contributory negligence, although another course might have been better and safer. All that is required of a person in such an emergency is to act with ordinary care in the circumstances; it being for the jury to determine whether such an emergency existed, and whether he acted with due care. Dickinson v. Erie Railroad Co., 81 N.J.L. 464, 81 A. 104, 37 L.R.A.(N.S.) 150." (Emphasis supplied.)

■ In Courtney v. Garden State Lines, Err. & App.1938, 120 N.J.L. 294, 199 A. 38 the court made it clear that the sudden emergency rule may not be invoked by one whose negligence "created or contributed" to the emergency. In referring to Barry v. Borden Farm Products Co., supra, the court said (120 N.J.L. at page 297, 199 A. at page 39):

> " * * * this ruling must be tempered with the condition that the driver's position is not attributable to his own fault. *The exoneration does not apply when the driver's negligence creates or contributes to the exigency,* for then there ensues a precedent actionable wrong, distinct from consideration of the later choice of conduct in the emergency. There is no invariable immunity in a claim that the best judgment of the moment was summoned in a critical juncture, when it is possible to conclude that alternative courses were previously open to selection, one of which could have averted the crisis and have made unnecessary the quick decision that connoted danger." (Emphasis supplied.)

In Dobrow v. Hertz, Err. & App.1940, 125 N.J.L. 347, 15 A.2d 749 where the doctrine of the Barry and Courtney cases, supra, was reaffirmed, the Court stated (125 N.J.L. at pages 349–350, 15 A.2d at page 751):

> "It is true that when one is faced with a sudden emergency, not caused by his own tortious conduct, the law does not charge him with actionable negligence if, in the making of a hasty decision between two alternative courses of action, he does not exercise or select the wisest course and succumbs to an honest mistake of judgment. The law merely requires that conduct which is reasonable to expect of him under the circumstances. But it is equally true that it is for the jury to determine whether an emergency existed and whether he acted with the care required of him under the circumstances. * * * *In addition, it was also for the jury to determine whether or not defendant himself was responsible for the existence of the emergency. For if he was, if his tortious conduct created the emergency he may not be exonerated. He, of course, cannot take advantage of his own wrongdoing.* * * * "[4] (Emphasis supplied.)

---

4. The New Jersey sudden emergency doctrine is in accord with the general rule as stated by the text writers.

"One who is at fault in bringing about an emergency is necessarily at fault as to the injurious consequences thereof.

In accordance with the foregoing, the trial judge having charged the jury that "negligence cannot be imputed because of the failure to perform a duty so suddenly arising that there is not opportunity to apprehend the situation and act accordingly," should also have given the instruction that "the exoneration does not apply when the driver's negligence creates or contributes to the exigency." The failure of the trial judge to give this latter instruction to the jury was prejudicial error. It may, perhaps, be attributed to his view that "There is nothing in the evidence to show any emergency." [5]

One cannot square that statement with the fact that the trial judge presented to the jury for its consideration the sudden emergency doctrine in the instruction to which exception was made.

The wording of the instruction as given is almost identical with the black letter statement of the sudden emergency doctrine in 27 Pennsylvania Law Encyclopedia Negligence § 8, p. 26:

"Under the sudden emergency rule, negligence cannot be based on the failure to perform a duty which arises so suddenly and unexpectedly that there is no opportunity to comprehend the situation and to act according to the exigency."

There cannot be any doubt that the testimony, as presented, required proper instructions to the jury on the score of the sudden emergency doctrine.

The plaintiff's case was premised on the fact that the Bailey car, in which she was a passenger, was struck in the rear by the front of the Branin car, while both cars were proceeding in the same direction and in the same lane. If credited by the jury, the latter circumstances required the defendant to advance proof of absence of any negligence on the part of the Branin car if defendant were to prevail. Since plaintiff was a passenger in the Bailey car and the record was bare of any evidence that she was guilty of any contributory negligence, she was entitled to recover against defendant in the event that she could establish negligence on the part of the Branin car even though the driver of the Bailey car was also negligent.

Officer Silver testified, as earlier pointed out, that the deceased driver of the Branin car had told him that "when he observed the Bailey car slowing or stopping that he attempted to stop and due to the road being wet, he could not stop quick enough without hitting them."

On this score, New Jersey R.S. 39:4–89, N.J.S.A., provides:

"The driver of a vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard to the speed of the preceding vehicle and the traffic

---

The [sudden emergency] rule * * * cannot be invoked by one who has brought the emergency upon himself by his own wrong or who has not used due care to avoid it." 38 Am.Jur. Negligence § 41, p. 687.

"The sudden emergency rule cannot be invoked by one whose negligence or wrongful conduct created the emergency or gave rise to a situation of peril. Generally the driver of an automobile cannot invoke the emergency rule as a means of avoiding the effect of his own violation of a traffic rule or a rule of the road. He is not permitted to create an emergency by his own negligence, as by operating his vehicle at a reckless or unlawful rate of speed, or on the wrong side of the highway, and then derive a

benefit from such situation." 5A Am. Jur. Automobiles and Highway Traffic § 212, pp. 357–358.

See also Restatement, Torts § 296 and Comment a; 65 C.J.S. Negligence § 17e, p. 412; Blashfield, Cyclopedia of Automobile Law and Practice, § 669.

5. The trial judge made this statement when plaintiff's counsel excepted to his instruction with respect to the sudden emergency doctrine because of its failure to state that it was only applicable where there was no responsibility for the existence of the emergency on the part of the party invoking the doctrine. The statement was not made in the presence of the jury.

upon, *and condition of,* the highway." (Emphasis supplied.)

It is undisputed that the roadway, at the time of the accident, was wet and the evidence is uncontradicted that the Bailey car, at least prior to the accident, had been travelling at about 25 or 30 miles per hour. There was also evidence of a substantial impact on collision from which the jury could have inferred excessive speed on the part of the Branin car.

The defendant's case was premised on its position that there was a sudden slowing-down or stopping of the Bailey car and that this was the sole cause of the accident. Assuming a jury finding that a sudden slowing-down or stopping occurred, the jury still could have found that the Branin car was negligent, if, in its view, the Branin car had followed the Bailey car "more closely than is reasonable and prudent, having due regard to the speed of the preceding vehicle [the Bailey car] and the * * * condition of, the highway."

There remains for disposition plaintiff's contention that the trial judge erred in his instructions to the jury on intervening and proximate cause in charging with respect to liability and her injuries.

It may be stated, preliminarily, that plaintiff had testified that in the collision between the two vehicles she was thrown against the dashboard injuring her chest.[6] Dr. Willis G. Price, plaintiff's physician testified that when he examined her on the day following the accident that "there was tenderness in the left chest, and there was some swelling and discoloration on the right breast";[7] some ten weeks later Dr. Price observed "a hard lump in the right breast". Plaintiff's testimony established that she was admitted to the Memorial Center Hospital in New York City on March 11, 1957 (some three months after the accident), a biopsy was performed on the right breast, malignancy was found and a radical mastectomy was performed on the right breast the following day. There was expert testimony that the mastectomy was, and was not, causally related to the trauma sustained to the right breast in the accident.

The testimony further established that the plaintiff underwent radical mastectomy of the left breast for carcinoma in 1949, some six years before the accident.

The trial charge instructed the jury as follows with reference to the testimony as to plaintiff's injuries:

"It is necessary in order for the plaintiff, Lillie Bailey, to recover to show that the deceased defendant, Mr. Branin was negligent, and secondly, that the negligence was *the* proximate cause of her injury. If there was an intervening cause, particularly with relation to the cancer, such as the normal course of the disease, then it cannot be said that the negligence of the defendant, if any, was *the* proximate cause of the alleged aggravation of the cancer." (Emphasis supplied.)

Exception was taken by plaintiff's counsel to the instruction stated, on the ground that the trial judge had used the language of "the proximate cause" instead of "a proximate cause". The trial judge, noting the exception, stated "I won't bring the jury back. I don't think it is proper."

On this appeal plaintiff contends that the instruction "implies that there can be only a single proximate cause of injury whereas under the law of New Jersey many causes may proximately contribute to the result, for all of which the defendant would be liable if his negligence was *a* (rather than *the*) proximate cause, that is, a substantial factor in producing them." She further com-

---

6. The plaintiff also testified that she suffered injuries to her head and other parts of her body.

7. Dr. Price testified he found "swelling and tenderness on the left side of the head and scalp" and a "laceration on the left leg, the inner part of the left leg just above the ankle."

plains that the trial judge failed to define "intervening cause" so that "if the jury believed that Bailey's negligence was an intervening cause, they were permitted by the instruction to find that Branin's negligence was not *the* proximate cause of plaintiff's injuries."

 We are of the opinion that the instruction complained of, insofar as it related to liability for the happening of the accident, was erroneous. Under New Jersey law, which is in accord with the general rule, it was not necessary for the plaintiff to show that Branin's negligence was "the" proximate cause of the accident but only to establish that it was "a" proximate cause.

The New Jersey cases, set forth in the margin,[8] subscribe to the view expressed in Comment d to Section 430, Restatement, Torts, which reads as follows:

"In order that a negligent actor may be liable for harm resulting to another from his conduct, it is only necessary that it be *a* legal cause of the harm. It is not necessary that it be *the* cause, using the word "the" as meaning the sole and even the predominant cause. The wrongful conduct of a number of third persons may also be a cause of the harm so that such third persons may be liable for it, concurrently with the actor."

Insofar as the instruction related to any connection between the cancer of the right breast and the happening of the accident was concerned, it was confusing and erroneously so. The jury should have been instructed that if the cancerous condition in the right breast merely represented the normal course of a pre-existing cancerous condition to which the injuries suffered in the accident did not contribute there was no liability with respect to it as far as Branin

was concerned even though his negligence contributed to the happening of the accident.

For the reasons stated the judgment of the District Court insofar as it orders judgment to be entered in favor of the defendant, Naomi E. Branin, Administratrix of the Estate of Wilbur H. Branin, deceased, and against the plaintiff, Lillie Bailey, pursuant to the jury's verdict of "no cause of action", will be reversed and a new trial granted, and the cause remanded with instructions to proceed in accordance with this opinion.[9]

---

**8.** Hellstern v. Smelowitz, App.Div.1952, 17 N.J.Super. 366, 86 A.2d 265; Mulquinn v. Lock Joint Pipe Co., App.Div. 1951, 13 N.J.Super. 467, 80 A.2d 634; Menth v. Breeze Corporation, 1950, 4 N.J. 428, 73 A.2d 183, 18 A.L.R.2d 1071.

**9.** The judgment of the District Court also relates to the dismissal of a voluntarily discontinued suit by Isaac Bailey against the defendant, and the counterclaim of the defendant against Isaac Bailey, as to which no appeals were taken.